Merrimack, ⎱
June, 1896. ⎰

## STATE *v.* GERRY.

Under the constitution, no one without his consent can be sentenced or punished for any criminal offence not within the jurisdiction of a justice of the peace until he is found guilty by the verdict of a jury.

A person charged with such an offence cannot be subjected to a trial by and, if found guilty, to the sentence of a magistrate or police court from which he must appeal in order to obtain a trial by jury.

The constitution requires that misdemeanors not within the jurisdiction of a justice of the peace shall be prosecuted by indictment or by information.

The first clause of section 1, chapter 117, Laws 1895, is unconstitutional and void.

APPEAL, by the defendant, from the sentence of the police court for an aggravated assault. The defendant was arraigned before the police court of Concord, and pleaded not guilty. He was tried by the police court, found guilty, and sentenced to pay a fine of $100. He appealed to the supreme court, and recognized for his appearance and to enter and prosecute his appeal. He moved that the appeal be dismissed because the offence charged is beyond the jurisdiction of the police court, and the judgment appealed from is unauthorized and void. Subject to his exception, the motion was denied.

*Walter D. Hardy*, solicitor, *Herbert I. Goss, George B. Cox, James W. Remick*, and *Daniel C. Remich*, for the state.

*Almon F. Burbank*, for the defendant.

CARPENTER, C. J. An aggravated assault is punishable by a fine not exceeding $200, or by imprisonment not exceeding one year, or by both. P. S., c. 278, s. 21. If the police court had no jurisdiction to try and determine the question of the defendant's guilt or innocence of the offence charged in the complaint, the judgment is void and the appeal must be dismissed. *State* v. *Dolby*, 49 N. H. 483; *State* v. *Runnals*, 49 N. H. 498; *State* v. *Thornton*, 63 N. H. 114; *State* v. *Perkins*, 63 N. H. 89. By the act of March 29, 1895 (Laws 1895, c. 117, s. 1), jurisdiction of all criminal cases where the fine does not exceed $200 and the term of imprisonment does not exceed one year is expressly conferred upon police courts; and if under the constitution the legislature had the power to enact it, the defendant's motion to dismiss the appeal was properly denied.

"No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land." Bill of Rights, *art.* 15. It has never been denied or doubted that by this article trial by jury according to the course of the common law is secured to the defendant in all criminal cases without exception. *State* v. *Ray*, 63 N. H. 406, 407. It is the only provision of the constitution relating to trial by jury in prosecutions for crimes not capital. Strike it out, and there is nothing to prevent the enactment of a statute providing that all criminal offences now known to our law, except murder in the first degree, may be tried and determined without a jury by the supreme court, by a justice of the peace, or by a police court.

The framers of the constitution who took care to secure a jury trial to the parties in a controversy over the smallest amount of property (Bill of Rights, *art.* 20; Const. of 1792, *art.* 77) did not intend to leave in doubt the right of persons charged with an offence, however trivial, against the criminal law to a like trial. Their language means what they understood it to mean. "The language of the constitution is to be understood in the sense in which it was used at the time of its adoption." *Opinion of Justices*, 44 N. H. 633, 635; *Ib.*, 41 N. H. 550, 551; *Hale* v. *Everett*, 53 N. H. 9, 170; *Copp* v. *Henniker*, 55 N. H. 179, 193; *State* v. *Saunders*, 66 N. H. 39, 76; *State* v. *Griffin*, 66 N. H. 326, 327. Whatever the parties to the great charter understood in 1215 to be the meaning of the words "by the judgment of his peers" (*Hurtado* v. *California*, 110 U. S. 516, 529; 1 Steph. Hist. Cr. Law 162; 1 P. & M. Hist. Eng. Law 152, note, and 581; Hall. Mid. Ages 342, note), our fathers in 1784, as well as the first continental congress in 1774, understood them to mean trial by jury,— that they secured to the people "the great and inestimable privilege of being tried by their peers of the vicinage, according to the course" of the common law. 2 Kent 6. Such was the understanding of Coke when he wrote his commentary on the great charter. 2 Inst. 28, 29, 48–50. Precisely what significance is to be given to the words, "or the law of the land," need not now be considered. *Mayo* v. *Wilson*, 1 N. H. 53, 56–59; *Dartmouth College* v. *Woodward*, 1 N. H. 111, 130; 2 Kent 13; Cool. Con. Lim. (6th ed.) 431, 437; 2 Inst. 50–52. Whatever may be their meaning, they do not restrict or qualify the right of trial by jury in prosecutions for crime.

"The constitution contains no definition or description of the trial by jury. . . . It is referred to in the bill of rights as an institution which constant practice from the earliest periods of the colonial history had made perfectly familiar to the people; and when trial by jury is spoken of in the constitution, the term must

be understood to mean that method of trial according to the common law of England and substantially such as was used and practiced at that time in this state." Chief Justice *Perley's* charge to the grand jury at Plymouth, November, 1866. It " is a trial according to the course of the common law and the same in substance as that which was in use when the constitution was framed." *East Kingston* v. *Towle*, 48 N. H. 57, 64; *Copp* v. *Henniker*, 55 N. H. 179, 193–203; *King* v. *Hopkins*, 57 N. H. 334, 350; 2 Sto. Const. (6th ed.), s. 1789.

" The essentials of jury trial . . . are shown by common-law principles and by history." *State* v. *Saunders*, 66 N. H. 39, 76. "Accusations of criminal conduct are tried at the common law by jury; and wherever the right to this trial is guaranteed by the constitution without qualification or restriction, it must be understood as retained in all those cases which were triable by jury at the common law, and with all the common-law incidents to a jury trial, so far, at least, as they can be regarded as tending to the protection of the accused." Cool. Con. Lim. (6th ed.) 389.

It is essential to a jury trial that it be had in a court of competent jurisdiction, presided over by a judge qualified to instruct the jury in matters of law. *Pierce* v. *State*, 13 N. H. 536, 566–569; *State* v. *Saunders*, 66 N. H. 39, 76. "Another excellency of this trial is this: that the judge is always present at the time of the evidence given in it. Herein he is able in matters of law emerging upon the evidence to direct them; and also in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies." Hale Com. Law 291, 292.

There must be a lawful accusation. This is as essential to a common-law trial by jury as any other incident, as, for example, the number of the jurors and the unanimity of their verdict. By the common law of the colony, no one could be subjected to a trial for any criminal offence beyond the jurisdiction of a justice of the peace, except upon an indictment returned by a grand jury in a case of felony; or in the case of misdemeanors, on such indictment or upon an information filed by the attorney-general. The English common law respecting appeals of murder and other crimes (4 Bl. Com. 312–316), and its rule that one found guilty of a felony by the verdict of a jury in a civil cause might without other accusation be put on trial for the crime (1 Ch. Cr. L. 164, 165; Bac. Abr., Indictment, B), were never adopted here.

The provincial act of 1718 (Prov. Laws, ed. 1771, c. 86), relating to the power and duty of coroners in taking inquisitions of death, was declaratory of the common law. Bac. Abr., Coroner, C; 1 East P. C. 381. It is not material to the present inquiry whether the colony adopted the English common-law doctrine

that upon the inquisition alone one could be put on his trial for the homicide (4 Bl. Com. 301, 302), because a coroner's jury was a grand jury (2 Hale P. C. 61, note; Act of 1718, *supra*; Act of June 10, 1791; Laws, *ed.* 1797, *p.* 132) and their inquisition an indictment. 2 Inst. 32, 550; 4 Co. 46, 47; *Reg.* v. *Ingham*, 5 B. & S. 257, 270. If in colonial times or since there ever was such a trial, no record or historical mention of it has been produced.

Without an accusation by indictment or information no one could be tried or punished for any criminal offence not within the jurisdiction of a justice of the peace. The required accusation was not a mere form of procedure, but a substantial protection of every citizen against false and malicious charges of crime,— a valuable security of his "life, liberty, and estate" and of his enjoyment thereof. "As for trials in causes criminal, they have this further advantage that regularly the accusation, as preparatory to a trial, is by a grand jury. So that as no man's interest according to the course of the common law is to be tried or determined without the oaths of a jury of twelve men, so no man's life is to be tried but by the oaths of twelve men and by the preparatory accusation or indictment by twelve men or more precedent to his trial." Hale Com. Law 295. "In times of difficulty and danger, more is to be apprehended from the violence and partiality of judges appointed by the crown in suits between the king and the subject, than in disputes between one individual and another to settle the metes and boundaries of private property. Our law has therefore wisely placed this strong and two-fold barrier of a presentment and a trial by jury between the liberties of the people and the prerogative of the crown. . . . The founders of the English law have, with excellent forecast, contrived that no man should be called to answer to the king for any capital crime unless upon the preparatory accusation of twelve or more of his fellow-subjects, the grand jury; and that the truth of every accusation . . . should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors indifferently chosen and superior to all suspicion. So that the liberties of England cannot but subsist so long as this palladium remains sacred and inviolate; not only from all open attacks . . . but also from all secret machinations which may sap and undermine it by introducing new and arbitrary methods of trial by justices of the peace, commissioners of the revenue, and courts of conscience. And however convenient these may appear at first, . . . let it be again remembered . . . that these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution; and that, though begun in trifles, the precedent may gradually increase and spread to the utter disuse of juries in questions of the most momentous concern." 4 Bl. Com. 349, 350.

· With this language of Blackstone the members of the bar who
assisted in framing the constitution in 1784 were familiar.  His
work was the chief, if not the only, legal text-book they pos-
sessed.  It is morally certain that the people among their re-
served rights did not intend to omit, and did not understand
that they did omit, any part of this " two-fold barrier " against
oppression,— this " sacred bulwark " of their liberties.

" The grand jury perform most important public functions,
and are a great security to the citizens against vindictive prose-
cutions, either by the government, or by political partisans, or
by private enemies."  2 Sto. Const. (5th ed.), s. 1785.  " If
. . . the people are enlightened, and honest, and zealous in
defence of their rights and liberties, it will be impossible to sur-
prise them into a surrender of a single valuable appendage of
the trial by jury."  Ib., s. 1791.

" The right of individual citizens to be secure from an open
and public accusation of crime, and from the trouble, expense,
and anxiety of a public trial, before a probable cause is estab-
lished by the presentment and indictment of a grand jury, in
case of high offences, is justly regarded as one of the securities
to the innocent against hasty, malicious, and oppressive persecu-
tions, and as one of the ancient immunities and privileges of
English liberty."    Jones v. Robbins, 8 Gray 329, 344.

In the case of misdemeanors, the requirement of an informa-
tion filed by a sworn public officer, learned in the law, who has
no motive " other than to protect and promote the public in-
terest " (State v. Dover, 9 N. H. 468, 472), and whose duty it is as
much to secure the innocent from persecution as to prosecute the
guilty, affords a protection against unfounded and malignant
charges at least equal to that afforded by the grand jury in the case
of felonies.   It would be much greater than that of the latter if
the proceedings and practice in the grand jury room were the
same here as in England, where, to prevent vexatious indict-
ments for certain misdemeanors, it has been found necessary to
provide by statute that no one shall lay before the grand jury a
charge of certain misdemeanors without permission of a judge,
the attorney-general, or of the solicitor-general, unless he is
bound over to prosecute by a magistrate.   The criminal code
commissioners in 1879 recommended that the restriction be ex-
tended to all offences.   1 Steph. Hist. Cr. L. 293, 294.

In this state grand juries have, it is believed, usually if not
always been instructed not to return a bill against the accused,
unless upon the evidence laid before them — the state's evidence
alone — they are satisfied of his guilt beyond a reasonable doubt.
1 Ch. Cr. L. 318; 4 Bl. Com. 303.   But whether this is the
true rule or not, the law that no man can be publicly arraigned
and put on trial for any alleged crime upon the mere accusation

of his neighbor, though made under oath, until the charge has been investigated and found true, or probably true, by a grand jury of his fellows or an impartial public officer, is an invaluable protection against false and malignant accusations of crime.

In the exceptional class of cases referred to,— cases of which a justice of the peace in 1784 had jurisdiction,— the right of the accused was to obtain a jury trial by taking an appeal from the judgment of the justice on giving security to prosecute it and paying costs. *State* v. *Griffin*, 66 N. H. 326. This burden upon the right of jury trial has been maintained under the constitution, upon the sole ground that it existed when the constitution was adopted. *Copp* v. *Henniker*, 55 N. H. 179, 195, 196. In all other cases trial by jury was free. The accused was not obliged to purchase or even to demand it. Without it he could not be convicted or punished. It was his right not to be " deprived of life, liberty, or estate " for any criminal offence until in the due course of the common law a verdict of guilty against him was obtained. The burden rested not upon him to procure either a trial or an acquittal. It rested on the state — the prosecution— to obtain a trial by jury, as well as a conviction by their verdict. If he pleaded not guilty, he was not, and could not be, required to do or say anything more. The law esteemed him innocent until a verdict to the contrary was rendered. The common law —the words of the great charter — assured him that he should not be condemned or punished for any criminal offence until a verdict of guilty by a jury of his equals was first obtained against him.

That the common-law right of trial by jury in criminal cases as it existed here in 1784, with all its incidents, " so far at least as they can be regarded as tending to the protection of the accused," is secured to the people by the constitution, is not open to doubt. It is established by numerous judgments of the court, and is not questioned by the counsel for the state.

The question presented is whether this right is infringed or substantially impaired by the act of March 29, 1895 (Laws 1895, c. 117), which provides that, " Police courts shall have concurrent jurisdiction with the supreme court in any criminal case where the fine does not exceed two hundred dollars and the term of imprisonment does not exceed one year. In case of an appeal in any case which is beyond the jurisdiction of a justice of the peace, the appellant shall enter into recognizance as in other cases, in any sum not less than one hundred dollars nor more than three hundred dollars."

It is not claimed that offences punishable by such a fine or term of imprisonment were in 1784 within the jurisdiction of a justice of the peace. In substance, the act (on the interpretation most favorable to the state) declares that a person accused

in the cases specified may be tried, found guilty, and condemned
to the prescribed punishment by a police judge, subject only to
the right of appeal provided by the general law as follows:
" A person sentenced for an offense by a police court, . . . may,
at the time such sentence is declared, appeal therefrom to the
supreme court at the trial term next to be holden for the county.
. . . Before the appeal is allowed, the appellant shall enter into
recognizance, with sufficient sureties, in a reasonable sum, not
exceeding one hundred dollars, to appear at the court of appeal,
to prosecute his appeal with effect, to abide the order of the
court thereon, and, if so required, to be of good behavior in the
meantime.    If the appellant fails to enter and prosecute his ap-
peal, . . . his recognizance shall be declared forfeited, and the
clerk . . . shall  transmit  to  the . . .  police  court  appealed
from, a certificate of such forfeiture.    The justice shall record
such certificate, shall add to the costs fees for copies sent to the
clerk, fifty cents for the clerk's certificate, and fifty cents for re-
cording it; and he shall issue a mittimus . . . to carry into ef-
fect the original sentence, with such increased costs." P. S., c.
252, ss 2, 3, 4.

If because of his poverty, or because he is a stranger in a
strange land, or for other reason, he is unable to obtain suffi-
cient sureties, or to pay the required fees, the accused has no ap-
peal and no jury trial.    If he secures his appeal, but is unable
or for any cause fails to enter and prosecute it, not only is the
sentence of the police court affirmed, but he is charged with ad-
ditional costs, and his recognizance is forfeited.    In other words,
for taking and failing to pursue his appeal he is subjected not
only to the original sentence, but also to the penalty of paying
costs and the amount of his recognizance.    The only ground
upon which it has been held or claimed that under the constitu-
tion the right of jury trial may be subjected to these burdens is
that in 1784 they existed by law in cases within the jurisdiction
of a justice of the peace; that it is, with these burdens upon it,
the same trial in substance as that which was in use in those
cases when the constitution was framed.

It is not questioned that the imposition of these burdens on the
right of jury trial in other cases is forbidden by the constitu-
tion.    " If, in a class of criminal cases, at the date of the constitu-
tion, a defendant was entitled to a jury trial upon his complying
with the single condition of remaining in custody or giving secu-
rity for his appearance merely as he might elect, his constitu-
tional right would be infringed by such a material alteration of
the terms on which he can enjoy the right, as making his enjoy-
ment of it depend upon his paying a jury fee, or the costs of the
prosecution, or giving security for his appearance without the
option of remaining in custody, or giving security for anything

else than his appearance, or incurring the risk of increased punishment, or submitting to anything else that would operate as a penalty for the exercise of the right." *Copp* v. *Henniker*, 55 N. H. 179, 202; *State* v. *Griffin*, 66 N. H. 326, 328, and cases cited.

But it is suggested that the court may grant an appeal without requiring the defendant to comply with the requirements of the law regulating appeals,— that an appeal may be allowed upon the defendant's merely recognizing for his appearance, as in cases where he is bound over to answer.

The statute admits of only two possible constructions. It either does, or does not, confer the right of appeal. If it does not, nobody contends that it can be sustained. If it does, it gives the appeal provided by the general law. This is undoubtedly the true construction. It is what the legislature intended. The statute is to be read precisely as if the general law of appeal were repeated in it and re-enacted. But there was no occasion for re-enacting the general law. Statutes are construed in view of the existing law. The general law of appeal — the provision that any person sentenced by a police court may appeal therefrom — extends to every case created by subsequent legislation that falls within it. *Roberts* v. *Stark*, 47 N. H. 223, 225; *State* v. *Rum*, 51 N. H. 373; *State* v. *Bean*, 63 N. H. 249.

An appeal from a subordinate tribunal's determination of fact is unknown to the common law. It exists only by statute. *Wetherbee* v. *Johnson*, 14 Mass. 412, 420; *Commonwealth* v. *Richards*, 17 Pick. 295, 296; *United States* v. *Wonson*, 1 Gall. 4, 14, 15; *State* v. *White*, 41 N. H. 194, 196. The court cannot allow an appeal where none is provided, nor can it dispense with any of the prescribed conditions of an appeal that is provided. When the legislature declares that before an appeal is granted the appellant shall enter into a recognizance, the court cannot say that it shall be granted without a recognizance. For appeal on condition, the court cannot substitute appeal without condition. For the appeal intended and provided by the legislature, the court cannot substitute an appeal which the legislature did not intend. The court cannot lawfully legislate.

Undoubtedly, " when a statute may constitutionally operate upon certain persons or in certain cases, and was not evidently intended to conflict with the constitution, it is not to be held unconstitutional merely because there may be persons to whom, or cases in which, it cannot constitutionally apply; but it is to be deemed constitutional, and construed not to apply to the latter persons or cases, on the ground that courts are bound to presume that the legislature did not intend to violate the constitution." *Opinion of the Justices*, 41 N. H. 553, 555. This is merely saying that a statute is to be held unconstitutional in

those particulars only that conflict with the constitution. So, " where there are different provisions in the same statute so distinct and independent that the one may not have been the motive or inducement to the other, one may be held valid and the other " unconstitutional and void. *Jones* v. *Robbins*, 8 Gray 329, 338; *Nolan's Case*, 122 Mass. 330, 332, 333. A statute made in express terms both retrospective and prospective may be held valid so far as it looks to the future, and void so far as it affects past transactions. *Kent* v. *Gray*, 53 N. H. 576; *Rockport* v. *Walden*, 54 N. H. 167.

Undoubtedly, " whatever may be the language of the legislature " in any case, " the court is bound to presume that it intended to keep within the limits of the constitution." *Leavitt* v. *Lovering*, 64 N. H. 607, 608. In other words, if the language of the statute is capable of being so construed as to be consistent with the constitution, the court is bound to give it that construction. If not capable of such construction, all the court can do is to pronounce it void. This is the whole extent of the doctrine. It affords no warrant for giving the statute a meaning that the legislature did not intend. It does not authorize the addition to the statute of such words, provisions, or modifications, not therein expressed or implied, as may be necessary to render it consistent with the constitution. If it did, an unconstitutional statute would be impossible. By addition or subtraction its defects could always be cured. For example, in *Perkins* v. *Towle*, 58 N. H. 425, section 23, chapter 231 of the General Statutes, extending the provision for actions by a landlord against a tenant to cases where that relation did not exist, was held unconstitutional because, by section 17 of the act, the defendant was required, before his appeal was allowed, to recognize with sufficient sureties to enter and prosecute his appeal, to pay all rent then due or which might become due, and such damages and costs as might be awarded against him, thereby imposing upon his right of trial by jury an unwarranted burden. The objection could have been easily cured by striking out of section 17 the requirement of a recognizance if the court had the power. It is, in this particular, impossible to distinguish that case from the present. If the provision for a recognizance can be stricken out here, it could, and ought to have been, in that case. If, under the statute now in question, the court can give the defendant an appeal without costs, free of all the conditions prescribed by the statute, it could and ought to have given the defendant in that case such an appeal, and have sustained the statute so far, at least, as the ground upon which it was decided is concerned. So, a statute authorizing searches without a warrant might be sustained as constitutional by judicially incorporating in it article 19 of the bill of rights; or, perhaps, a statute giving a justice of the peace juris-

diction of all felonies (Const., *art.* 4) by supplying, by judicial legislation, provisions for the attendance at his court of grand and petit juries.  *State* v. *Peterson*, 41 Vt. 504, 522.

If the court had the power to repeal the statute imposing burdens upon the appeal,— if, in defiance of the legislative will, it could give, or if the legislature should give, the accused " an unobstructed and unclogged right of appeal,"— the statute in question would not be free from constitutional objection.. The obligation to appeal is itself a burden unwarranted by the constitution.

By the statutes of Massachusetts, the appellant from the sentence of a justice of the peace or police court is required to recognize with sureties to appear at the court appealed to until the final sentence or order of that court, to abide such final sentence or order, and not depart without leave, and· in the meantime to keep the peace and be of good behavior.  He is subjected to no costs of taking or prosecuting his appeal unless upon his trial he is convicted.  If he fails to enter and prosecute his appeal, he is defaulted on his recognizance, " and the superior court may award sentence against him for the offence whereof he was convicted, in like manner as if he had been convicted in that court."  Mass. G. S., *c.* 173, *ss.* 1–5; Mass. P. S., *c.* 155, *ss.* 58–62.  On such default a more severe punishment than that imposed by the police court may be awarded him.  *Batchelder* v. *Commonwealth*, 109 Mass. 361.

In *Jones* v. *Robbins*, 8 Gray 329 (decided in 1857), it was held by a divided court that article 12 of the Massachusetts bill of rights (identical with our article 15, except that it contains the additional provision that " the legislature shall not make any law that shall subject any person to . . . infamous punishment . . . without trial by jury ") was not infringed by a statute authorizing a police court to try and pass sentence upon persons charged with an offence punishable by infamous punishment, subject to the right of appeal provided by the statutes above cited.  The court also held that these statutes conferred on the appellant "an unqualified and unfettered right of appeal."

The decision rests upon the mistaken view that the constitutional right of trial by jury is a privilege to be asserted, instead of an unconditional immunity from sentence or punishment for crime, until at the hands of a jury a verdict of guilty is obtained.  The court, after stating in substance that the last clause of article 12, prohibiting the legislature from making any law which shall subject any person to infamous punishment without trial by jury, was " added for greater caution," and though more explicit than the preceding clause " judgment of his peers " did not materially modify its meaning, say (*p.* 341): "As the object of the clause is to secure a benefit to the accused, which he may

avail himself of or waive, at his own election; and as the purpose of the provision is to secure the right, without directing the mode in which it shall be enjoyed; it is not violated by an act of legislation which authorizes a single magistrate to try and pass sentence, provided the act contains a provision that the party shall have an unqualified and unfettered right of appeal, and a trial by jury in the appellate court, subject only to the common liability to give bail, or to be committed to jail, to insure his appearance and to abide the judgment of the court appealed to. This is a necessary inconvenience, as is also the delay of the trial till the sitting of such court; they are the same and no greater than they would be in case the magistrate, instead of passing sentence, should, on examination, bind the accused over, or, as the necessary alternative, commit him to jail."

A fatal objection to this doctrine is that it puts the burden of obtaining a jury trial upon the defendant, instead of the state. It compels him to appear and demand the trial, without which the constitution expressly declares he shall not be condemned. The difference between a right to jury trial upon demand made therefor and the right not to be convicted or punished until a trial is had, is wide. A man is not to be imprisoned or otherwise punished because a corrupt or ignorant magistrate has found him guilty of crime, and he has not sufficient intelligence to demand and take the proper steps to obtain a trial by jury. As long as he remains entirely passive,— as long as he neither does nor says anything relative to the charge against him, except to maintain his innocence by a plea of not guilty,— he is assured by the express terms of the constitution that he cannot be punished until the state has obtained a verdict of guilty from twelve of his neighbors. "No subject shall be deprived of life, liberty, or estate but by the judgment of his peers." This language does not mean—it cannot reasonably be construed to mean—that he may be tried and finally condemned by a magistrate unless he takes certain prescribed measures to procure a constitutional trial.

To say that the required recognizance upon an appeal subjects the party to no greater inconvenience,— is no greater burden than the recognizance required upon an examination and binding over,— if it were true, does not conclude the matter. It is not merely the recognizance but the judgment of the magistrate, the sentence without a jury trial, that burdens. But it is not true. In legal effect, the difference between recognizances upon a binding over and upon an appeal is great. In the first case, the sole consequence of a default or forfeiture is to create a debt in the amount of the recognizance, payment of which may be enforced. Upon the forfeiture of the recognizance taken on appeal, not only is the defendant subjected to the payment of the

amount of the recognizance, but is also, under the Massachusetts statute, sentenced by the court appealed to as if he had been convicted in that court. By his default he is held to waive a jury trial. *Commonwealth* v. *Whitney*, 108 Mass. 5, 6, 7. If this is sound constitutional law, the legislature may enact a statute providing that a person bound over on examination who forfeits his recognizance, or who, in default of a recognizance, is committed to jail and escapes, may be brought in on a *capias* and sentenced for the offence charged as if he were convicted. It might dispense with the examination and recognizance, and provide that a person charged with crime who fails to appear upon a simple notice or summons may be brought in and judgment rendered against him upon default, as in civil actions. In each case he would be no more deprived of a jury trial than is the appellant; if he should appear and demand a jury trial, it would be accorded him. Trial by a magistrate — trial without a jury — is, in a constitutional sense, no trial; and no reason appears why upon the forfeiture of a recognizance the court may not be authorized to pronounce final sentence, as well without as with such a trial.

The consequence of the forfeiture of the appellant's recognizance under our statute (P. S., c. 252, s. 4) is, in effect, the same as it was in Massachusetts in 1857, except that there he might receive a more severe sentence than that appealed from. The difference is immaterial to the constitutional question.

The opinion of the majority of the court in *Jones* v. *Robbins* makes no answer to these views, nor to those there expressed by *Thomas*, J., dissenting, who says (*pp.* 351–353): "I concur also in the opinion [of the majority] that the citizen cannot be subjected to trial for an offence visited by a capital or infamous punishment, without the intervention of a grand jury, which, standing between him and the power of the government and the passions of the prosecutor, shall say, upon their oaths, that there is good cause why he shall be subjected to trial. But there is, to myself, plainer and more solid ground upon which the conclusion rests, that a police court or a justice of the peace cannot be clothed with jurisdiction to try the citizen for an offence which will subject him to a capital or infamous punishment. It is obvious to remark that, if the intervention of a grand jury is all that is wanting to the validity of this jurisdiction, the legislature might at once provide for the return of indictments into the police court, and, reserving to the accused the right of appeal, might subject him to a trial even for his life, before a single magistrate. I find it impossible to assent to any such conclusion, or to any reasoning that would lead to it. It seems to me plain that when the constitution declares that ' the legislature shall not make any law that shall subject any person to a capital or infamous punishment . . . without trial by jury,'

its meaning is trial by jury when and wheresoever he shall be tried; not upon his second trial, nor after having been subjected to another and different mode of trial. If, for an offence subjecting him to capital or infamous punishment, the citizen may be tried once without a jury, it is not easy to see why he may not be so tried a second time; why the legislature may not provide that, upon appeal to the municipal court, he may be tried by a single judge, and postpone his trial by jury to his appeal to this court. Such a law would, indeed, clog and obstruct his trial by jury; but the difference between that and this is in degree only. The subjecting the accused to one trial by a single magistrate obstructs the right of trial by jury, and essentially impairs its value. It places between the accused and a trial by jury a barrier not necessary for the security of the public, such as are the preliminary examination and the holding to bail. . . . It subjects him to unnecessary and often fatally burdensome expense before he can reach the tribunal by which it is his right and his security to be tried. The subject cannot be said, under such a law, to obtain his right ' freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay.' When you state the proposition that a man may be constitutionally tried for murder by a justice of the peace, or a police court, or by any single judge, even after indictment, and that he cannot have a trial by jury until he has been tried by a single magistrate, I think every mind familiar with the constitution and with the common-law rights secured by it, shrinks from the conclusion; yet it is to be observed that the twelfth article of the bill of rights makes no distinction between laws subjecting the citizen to capital and those subjecting him to infamous punishments. They stand on the same ground. . . . It is not an unobstructed and unclogged right of appeal which the twelfth article secures, but an unobstructed and unclogged right of trial by jury." To these weighty words of Judge *Thomas* no satisfactory reply has ever been made.

The doctrine of *Jones* v. *Robbins* has not found favor. It is repudiated by the highest courts of the land. The question first arose in the United States district court of New York in *Ex-parte Dana*, 7 Ben. 1, 4, 5, decided in 1873. Dana was charged by information in the police court of the District of Columbia with having published a libel, and was arrested in New York. A warrant to authorize his being taken to Washington was refused on the ground that he would there be tried in a manner forbidden by the constitution,— that is to say, in the police court without a jury, subject to a right of appeal to the supreme court of the district and there to be tried by jury. *Blatchford, J.*, said the offence of libel is " one of the crimes which must, under the constitution, be tried by a jury. The act of 1870 pro-

vides that the information in this case shall not be tried by a
jury, but shall be tried by a court. It is true that it gives to the
defendant after judgment . . . the right to appeal to another
court, where the information must be tried by a jury. But this
does not remove the objection. If congress has the power to
deprive the defendant of his right to trial by jury for one trial,
and to put him, if convicted, to an appeal to another court to
secure a trial by jury, it is difficult to see why it may not also
have the power to provide for several trials by a court without a
jury on several successive convictions, before allowing a trial by
jury. In my judgment, the accused is entitled, not to be first
convicted by a court and then to be acquitted by a jury, but to
be acquitted or convicted in the first instance by a jury."

The case is cited and approved in *Callan* v. *Wilson*, 127 U. S.
540, 554, 555 (1887), where upon full consideration of the ques-
tion it was unanimously held that a person accused of conspiracy
is entitled, under the provisions of the constitution of the United
States, to a trial by jury, and that an act of congress providing
that he may be tried, convicted, and sentenced by the police
court of the District of Columbia, subject to a right of appeal to
the supreme court of the district, is unconstitutional and void.
The court say (*pp.* 556, 557): "The argument, made in behalf
of the government, implies that if congress should provide the
police court with a grand jury, and authorize that court to try,
without a petit jury, all persons indicted,— even for crimes pun-
ishable by confinement in the penitentiary,— such legislation
would not be an invasion of the constitutional right of trial by
jury, provided the accused, after being tried and sentenced in
the police court, is given an unobstructed right of appeal to, and
trial by jury in, another court to which the case may be taken.
We cannot assent to that interpretation of the constitution. Ex-
cept in that class or grade of offences called petty offences, which,
according to the common law, may be proceeded against sum-
marily in any tribunal legally constituted for that purpose, the
guarantee of an impartial jury to the accused in a criminal pros-
ecution conducted either in the name, or by or under the author-
ity, of the United States, secures to him the right to enjoy that
mode of trial from the first moment, and in whatever court he
is put on trial for the offence charged. In such cases a judgment
of conviction not based upon a verdict of guilty by a jury is void.
To accord to the accused a right to be tried by a jury in an ap-
pellate court, after he has been once fully tried otherwise than
by a jury in the court of original jurisdiction and sentenced to
pay a fine or be imprisoned for not paying it, does not satisfy the
requirements of the constitution."

However free and unobstructed the right of appeal may be,
it subjects the accused to the trouble, expense, and anxiety of

two trials on the issue of guilt or innocence instead of one. It is said that a trial by the magistrate instead of an examination is " rather a benefit to the accused than a burden or disadvantage to him," because on a trial he must be discharged if " a reasonable doubt of his guilt is not removed," while on examination he " must be held for probable cause "; and that no more bail would be required on his appeal from a conviction than upon a binding over for his appearance. *State* v. *Craig*, 80 Me. 85, 89. But the question is upon the effect of the statute in the case of a conviction, not in the case of acquittal. The constitutional guaranty is not that the accused shall not be acquitted, but that he shall not be convicted and punished, without a jury trial. *Commonwealth* v. *Graves*, 112 Mass. 282.

An examination is not a trial. The holding to bail thereupon is not even an accusation. It is merely a finding that before the defendant is formally accused of the crime, the question of his guilt or innocence ought to be investigated by a competent tribunal, namely, the grand jury. 1 Ch. Cr. L. 89. It adds nothing to the weight of the complainant's charge. The defendant may without prejudice to his rights or stain upon his reputation, other than that caused by the charge alone, waive an examination and recognize without a hearing. It may be said that he may also waive a trial and take his appeal. Possibly he may; but he goes forth as a convicted criminal with merely a right to a new trial. He stands, morally and in respect to his character and good name, as if after a jury's verdict of guilty he is awarded a new trial. This is a hardship to which by the common law of England and the common law of the colony in 1784 he could not be subjected. The court in *State* v. *Craig* were apparently of opinion that no burden not pecuniary is or can be, in law, an unjustifiable burden upon the jury trial of the constitution. In the minds of a great majority of mankind, a stain upon the reputation or a blot on the character is a heavier burden than any mere pecuniary loss.

If the award of an unobstructed jury trial upon appeal answers the constitutional guaranty in one class of cases, it does in all. To sustain this statute will establish it as the constitutional law of the state, that a police court may, if the legislature think fit, be invested with authority to try and determine all felonies, including murder, subject only to the right of appeal.

The constitutional right to an accusation by information before being put on trial for a misdemeanor stands on the same ground as the right to indictment before being put on trial for a felony. Informations and indictments are classed together in the constitution (*art.* 87). If the former may be abolished, so may the latter; and with them, grand juries. All the barriers which the common law interposed between malicious and groundless charges

and a public trial may be removed. Any one owing a grudge against his neighbor, by his mere accusation of crime, no matter how false and malignant, may compel him to undergo the humiliation and shame of being publicly arraigned and tried on the question of his guilt or innocence.

In and prior to 1784, a justice of the peace had authority to try and determine, subject to appeal, those criminal offences only that were punishable by a fine not exceeding forty shillings, by whipping, or by setting in the stocks. 1 Prov. Papers 392, 395; 3 *Ib.* 187, 224; Prov. Laws (*ed.* 1761), *pp.* 1, 2, 48, 49; Prov. Laws (*ed.* 1771), *pp.* 9, 11, 16, 17, 18, 30, 31, 39, 40, 43, 52, 60. By the act of December 18, 1812 (Laws 1815, *p.* 328, *s.* 3), a justice was authorized to punish larceny of property not exceeding $6.66 in value by a fine of ten dollars, or imprisonment not exceeding thirty days. By the Revised Statutes, he was given authority to try and determine all cases where the punishment was by fine not exceeding ten dollars (R. S., *c.* 222, *s.* 1), certain cases punishable by imprisonment not exceeding thirty days (*Ib.*, *c.* 113, *s.* 15), and certain others punishable by imprisonment not exceeding six months (*Ib.*, *c.* 116, *ss.* 2, 3). In the revision of 1867, a justice was given jurisdiction of all offences where the punishment is by fine not exceeding twenty dollars, or by imprisonment not exceeding six months, or by both. Comm'rs' Rep. G. S., *c.* 235, *s.* 4; G. S., *c.* 234, *s.* 4.

The question of the constitutionality of this apparently increased jurisdiction of a justice of the peace has never been raised. Whether it is to be or may be sustained on the ground that the increase is ostensible rather than actual,— that ten dollars in 1812 and 1842, and twenty dollars in 1867, was no more in value than forty shillings in 1784, and that imprisonment in jail for six months is not more than a just and reasonable equivalent for the barbarous punishment of a public whipping and setting in the stocks,— or on the ground of usage and acquiescence (*Pierce* v. *State,* 13 N. H. 536, 573; *Copp* v. *Henniker,* 55 N. H. 179, 209; *King* v. *Hopkins,* 57 N. H. 334, 356; *Keniston* v. *State,* 63 N. H. 37, 38; *Railroad* v. *State,* 62 N. H. 648, 649; *State* v. *Bosworth,* 13 Vt. 402, 413), is a question not raised and not necessary to be considered.

*Exceptions sustained.*


CLARK, WALLACE, and PIKE, JJ., dissented: the others concurred.