STATE *v.* RAYMOND H. CANATELLA.

STATE *v.* HOWARD S. EDWARDS.

*William L. Phinney,* Attorney General and *Wyman P. Boynton,* County Solicitor (*Mr. Boynton* orally), for the State.

*Arthur J. Reinhart* (by brief and orally), for the respondent Canatella.

*Charles J. Griffin* (by brief and orally), for the respondent Edwards.

DUNCAN, J. Each respondent was charged with the taking of "Eighteen ($18.00) Dollars of the lawful currency and money of the United States of America of the value of Eighteen ($18.00) Dollars of the goods and chattels" of the complaining witness. While exceptions to the denial of the motions to quash for insufficient description of the offense charged have not been argued by the respondents, their brief indicates the basis of the exceptions to be an alleged insufficiency in the description of the money taken. Under the early cases of *Hamblett* v. *State,* 18 N. H. 384, and *Ford* v. *State,* 20 N. H. 404, a somewhat particular description of money taken was held to be required in indictments for larceny, although in the former case a particular description of each bill or note was said to be unnecessary. See also, *State* v. *Mahanna,* 48 N. H. 377. The reasons for the required description of

articles alleged to have been taken were stated in *State* v. *Fogg,* 92 N. H. 308, 309, and need not be repeated here. It was there held that where the total value of the property is alleged, the "value of each article is immaterial and need not be stated." The practical difficulty of furnishing a description of small bills taken was pointed out in *Commonwealth* v. *Grimes,* 10 Gray (Mass.) 470. *Cf.* A. L. I. Code Crim. Proc., *s.* 168. No better description is required than the circumstances of the particular case will admit (32 Am. Jur. 1022), and necessary omissions may be cured by recital that a more particular description is to the grand jurors unknown. *State* v. *Burke,* 54 N. H. 92, 94, 95; 36 L. R. A. (N. s.) 943. While the better practice calls for such a recital, its omission in this case is a formal rather than substantive defect, and not fatal. R. L., *c.* 427, *s.* 12. When the offense charged is larceny the degree of the offense is dependent upon the value of the goods taken. R. L., *c.* 452, *ss.* 3-5; Laws 1949, *c.* 140. Particular allegations of value are less material where robbery is charged, for the gist of the offense is force and intimidation. R. L., *c.* 455, *s.* 18; *State* v. *Gorham,* 55 N. H. 152, 166; *People* v. *Nolan,* 250 Ill. 351. The indictments sufficiently met the requirement of a full and plain description of the offense as required by Article 15th of the Bill of Rights. *State* v. *Fogg, supra.*

The respondents have directed their principal argument to the issue presented by their motions to quash because of the presence of the police officer in the grand jury room during the testimony of the complaining witness. The conduct of grand jury proceedings in this jurisdiction is little regulated by either Constitution or statute. Article 15th of the Bill of Rights makes no express reference to such proceedings but guarantees that no subject shall be "arrested, imprisoned . . . or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." Whatever the meaning of the concluding words of this article (*Mayo* v. *Wilson,* 1 N. H. 53, 55; *Hutchins* v. *Edson,* 1 N. H. 139, 140; Cooley, Const. Lim. (7th ed.) p. 500 *et seq.*), it will not be questioned that the common law right to "a lawful accusation" by a grand jury is among the rights safeguarded by the Bill of Rights. See *State* v. *Gerry,* 68 N. H. 495, 497. By statute, grand jurors are required to be sworn to secrecy. R. L., *c.* 427, *s.* 4. This requirement does not extend to witnesses before the jury. *Ib., s.* 5. The reasons assigned for the requirement of secrecy indicate that it is imposed primarily for the protection of persons other than an accused who is indicted. Wig. Ev., *s.* 2360; Orfield, Crim. Proc., 167. See *State* v. *Wood,* 53 N. H. 484, 493.

In the interest of secrecy as well as orderly and uninfluenced proceedings, the practice arose of excluding unauthorized persons from both the investigations and the deliberations of the jury. Modern applications of the practice have somewhat modified its earlier rigidity, but the test of authorized presence continues to depend upon the reasonable necessities of arriving at the truth. "One purpose of the grand jury in making its investigations and accusations is to arrive at the truth. Where that end in its essence cannot be achieved without the presence of more than one person the rule that only one person may be present is not applicable. . . . Such instances, however, rest upon inherent necessity and not upon convenience." *In re Lebowitch*, 235 Mass. 357, 362. Specific instances cited by the court in that case include the presence of an interpreter, a guard for a prisoner who testifies, and an attendant for a sick or disabled witness. Similarly it has been held that the presence of a stenographer does not violate the rule. *State* v. *Brewster*, 70 Vt. 341; *State* v. *Kemp*, 126 Conn. 60. See also, 4 A. L. R. (2d) 392, *passim*.

In the case before us the reason for the presence of the police officer during the testimony of the complaining witness before the grand jury does not appear, except as we learn that he was himself a witness before the jury. Since his presence is not shown to have been necessary beyond the time required for his own testimony, it must be deemed to have been to that extent unauthorized. Yet the proceedings were not necessarily for that reason invalidated. They were not thereby converted into a public trial entitling the respondents to be heard and represented. See 38 C. J. S. 1038, *s.* 39. There is no indication that their course was affected in any way adverse to the respondents by the officer's presence while not testifying. See *People* v. *Gould*, 345 Ill. 288, 322-325. In *State* v. *Challis*, 75 N. H. 492, a lawyer for the complaining witness expressed his views of the law while testifying before a grand jury. In overruling an exception to the denial of a motion to quash, it was held that this fact did not "establish the proposition that the jury were influenced thereby against the respondent. . . . Whether it might have had that effect is of course a question of fact which is answered in the negative by the ruling of the court denying the motion to quash." *Id.*, 492, 493. The case is controlling here, and consistent with what we understand to be the prevailing view in the absence of statute, in cases of unauthorized presence. Annotation, 4 A. L. R. (2d) 392, 395. In the absence of evidence of prejudice, the irregularity afforded no ground for quashing the indictments.

On direct examination of the complaining witness at the trial, the following inquiry was permitted: "Q. You said something about a gun. Who had a gun? A. They both had guns. *Mr. Griffin:* May it please the Court—Q. *By Mr. Boynton.* Did you see them both? A. I did, sir." Counsel for Edwards then objected because the indictment did not allege robbery by the use of firearms. The objection was overruled, subject to exception by each respondent. While no specific reference was made in the indictments to firearms it was alleged that the respondents assaulted the complaining witness, put him in "bodily fear and danger of his life," and by violence and putting in fear robbed him. The fact that one of the robbers had threatened the witness with a gun appeared early in the testimony without objection. It subsequently appeared from the testimony of other witnesses that Canatella was carrying a weapon in Manchester on the date of the robbery, and that a man who accompanied him also carried one. Much of the evidence related to the principal issue of identification of the respondents as the robbers. The testimony of the complaining witness that his assailants had both carried guns was competent for this purpose. See *State v. Iacavone,* 85 N. H. 207, 209. By the same token the respondents' motions that the jury "be instructed to ignore any evidence insofar as the gun is concerned" were properly denied. If the evidence might have been found likely to excite undue prejudice still this was not a compelled finding. *State v. Iacavone, supra,* 210.

The motions for directed verdicts of acquittal have neither been briefed nor argued, but were properly denied. Canatella was positively identified by the testimony of the complaining witness. Edwards was also identified by this witness, and there was evidence that his fingerprints were on the mirror of the complainant's taxi. The evidence warranted the verdicts of the jury. There was no error and the order is

*Exceptions overruled*

All concurred.