565 P.2d 1015

Charles DAVIS and Rudy A. Ortiz, Petitioners,

v.

Richard TRAUB, District Judge, Division XI, Second Judicial District, State of New Mexico, Respondent.

No. 11434.

Supreme Court of New Mexico.

June 27, 1977.

Marchiondo & Berry, William C. Marchiondo, David L. Norvell, Albuquerque, for petitioners.

Toney Anaya, Atty. Gen., Steven G. Farber, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

PER CURIAM.

Petitioners Davis and Ortiz were indicted before the Bernalillo County Grand Jury on February 25, 1977 for bribery and conspiracy. In the course of the grand jury proceedings, petitioners became aware that certain allegedly unauthorized persons were present during the grand jury investigation. A motion to quash the indictment was denied by respondent and petitioners sought to invoke the extraordinary remedy of prohibition. We granted an alternative writ and after a hearing we made the writ permanent and directed the respondent to quash the indictment.

During the presentation of testimony before the grand jury, the prosecuting assistant attorney general was present along with an investigator for the attorney general's office who acted as bailiff. This was at the direction of the attorney general, not at the direction of the court. The investigator, Patrick O'Hearn, had assisted in collecting information concerning the charges and had personally interviewed some of the witnesses who testified before the grand jury while he was present in the grand jury room. There was also an incident in which two witnesses appeared concurrently before the jury although no substantive testimony was given at that time. Petitioners contend that these irregularities were suffi-cient to taint the indictment because the possibility of outside influence occurring is deemed prejudicial.

The Supreme Court has the power to issue writs of prohibition by virtue of N.M.Const. art. 6 § 3. This writ is properly evoked when an inferior court is exceeding its jurisdiction or acting outside its jurisdiction. *General Atomic Co. v. Felter,* 90 N.M. 120, 560 P.2d 541 (1977). However, under some exceptional circumstances, this Court will grant such a writ where irreparable harm, extraordinary hardship, costly delays or unusual burdens of expense would result. *State v. Scarborough,* 75 N.M. 702, 410 P.2d 732 (1966). This issue to be resolved here involves important historical rights which have been adopted from ancient common law to protect the rights of an accused. The Montana Supreme Court in *State v. District Court of First Judicial Dist.,* 124 Mont. 249, 256, 220 P.2d 1035, 1039 (1950) considered the propriety of issuing a writ of prohibition under similar circumstances and concluded:

> [T]he issues are of such vital importance as to affect not only the indictments in the instant case but all the proceedings of the grand jury. Not only the rights of the relator but the validity of other indictments are involved. If all the defendants indicted by the grand jury are required to go to trial with these issues undecided serious miscarriages of justice may occur and expensive and needless jury trials take place causing useless expense to the taxpayers and subjecting the relator and other accused to fruitless and unnecessary trials.

This Court has never ruled on this issue but the district court did not feel compelled to follow the pronouncement of *State v. Hill,* 88 N.M. 216, 539 P.2d 236 (Ct.App.1975). This Court now specifically adopts that rule of law and we join the federal courts and numerous other state courts and hold that the presence of an unauthorized person before the grand jury requires dismissal of the indictment without the necessity of showing prejudice. The purpose behind such a rule is not only to

protect the secrecy of the proceedings but more importantly to prevent the possibility of undue influence on the witnesses and jurors. *United States v. Isaacs,* 347 F.Supp. 743 (N.D.Ill.1972).

■ Some states by statute have mandated the dismissal of an indictment when a person not specifically authorized by law appears before a grand jury. See *People v. Minet,* 296 N.Y. 315, 73 N.E.2d 529 (1947). Although some states without such statutes consider it a mere irregularity and require prejudice be shown, i. e. *State v. Canatella,* 96 N.H. 202, 72 A.2d 507 (1957), we feel that the view most consistent with our notions of justice is that prejudice can and should be presumed. See generally 4 A.L.R.2d 392 (1949). *State v. District Court of First Judicial District,* supra, and *State v. Revere,* 232 La. 184, 94 So.2d 25 (1957) trace the historical development of our grand jury system. The grand jury has evolved to where it now functions as a guardian of the citizens' right to be free from government harassment unless good cause is shown for attempting a prosecution. The grand jury is not, and should not be, the tool of the prosecuting authority to manipulate at will. Our statutes specify certain procedures and authorize specific persons to aid the grand jury's investigation of criminal activity. We will not permit anyone to circumvent the letter or the spirit of those laws.

■ The attorney general contends that O'Hearn was an "authorized person" and his presence in the grand jury room was not improper. The State argues that inasmuch as Judge Sanchez appointed O'Hearn a grand jury aide pursuant to § 41–5–7 N.M. S.A.1953 (2 Repl.Vol. 6, 1972) this was sufficient authorization for him to be present. This claim has no merit because grand jury aides are not authorized by statute to be present in the grand jury room unless they fall within the categories specified in § 41–5–4, supra, as district attorneys, interpreters, court reporters, etc. Section 41–5–7, supra, alone does not authorize such presence. Judge Sanchez testified that he did not intend the aides to be in the room during the taking of testimony. The attorney general presented to Judge Sanchez a list of many people to be approved to assist in the presentation of evidence to the grand jury. Only a portion of these individuals were attorneys. The list included secretaries, investigators and administrators from the attorney general's office. The attorney general then argued that any or all of these named individuals would be entitled to be in front of the grand jury during the taking of testimony. This argument, if carried to its logical extension, would open the doors of the grand jury to such extent that the proceedings would neither be private nor fair.

■ Alternatively, the State claims since O'Hearn was a member of the attorney general's staff that § 41–5–4, N.M.S.A.1953 (2 Repl.Vol. 6, 1972) permitted him to be present in the room. That statute reads:

All taking of testimony will be in private with no persons present other than the grand jury and the persons required or entitled to assist the grand jury, including the district attorney and *the attorney general and their staffs,* interpreters, court reporters and the witness. Inspections or grand jury views of places under inquiry may be made when directed by the foreman wherever deemed necessary within the county, but no oral testimony or other evidence may be received except during formal private sessions. (Emphasis added.)

In oral argument, the attorney general made the assertion that any member of the staff could properly be present during the grand jury hearings. This is clearly an erroneous interpretation and ignores the meaning of the words "persons *required* or *entitled* to assist the grand jury * * *" Such persons are enumerated in the statute. Staff in this context refers to the *legal* staff of the district attorney or the attorney general's office, e. g. assistant district attorneys or assistant attorneys general. This does not mean that a secretary, runner, investigator or non-legal personnel is free to roam in and out of the grand jury room while testimony is being given. This would violate the sanctity and secrecy of the entire system.

■ The attorney general also stated that since the court did not appoint a bailiff that O'Hearn could, as a grand jury aide, function in that capacity. We have no quarrel with this contention; however, there was no necessity for the investigator to be present in the jury room. He could have waited outside the door and called in the witnesses from there. There was no need for him to be in the room when his presence could have had a coercive or oppressive effect on some of the witnesses. In *State v. Revere,* supra, an investigator operated a recording machine while the witness testified and that court held that this was a substantial violation of the defendant's rights.

■ An incident also occurred during the investigation wherein two witnesses appeared before the grand jury simultaneously. When Cecil Irwin was called to testify he requested permission for Frank Diaz to be present "for the experience." The assistant attorney general consented but later asked Diaz to leave. Even though no substantive testimony was given at that time, under the per se prejudice rule this would also taint the indictment. See *State v. Bower,* 191 Iowa 713, 183 N.W. 322 (1921); *Com. v. Harris,* 231 Mass. 584, 121 N.E. 409. Section 41–5–4, supra, also refers to "the witness" in the singular. This action clearly violated the terms of the statute and we are distressed at the slipshod procedure which resulted in this situation.

■ The charge was also made that this Court should not overturn an indictment on a "mere technicality." It is precisely those mere technicalities that give meaning and vitality to our precious constitutional rights. The Louisiana Supreme Court in *State v. Revere,* 232 La. at 203, 94 So.2d at 32, also recognized this proposition.

The important point that is frequently overlooked in similar instances is that the mere presence of an unauthorized person in the grand jury room is violative of a substantial right of the citizen and cannot, if we are to preserve the safeguards of our heritage in grand jury proceedings, be abridged through the subterfuge of shifting to that citizen the burden of proving such an invasion of his substantial right was prejudicial. "The contention," the highest court of Massachusetts points out, "that the burden is upon the defendant to show he was injured by action of the grand jury is unsound, because in the nature of things it would be impossible to prove the fact if true before the jury trial and because the wrong complained of is the violation of a substantial right guaranteed by the Bill of Rights, and is not a mere failure of the grand jury to observe technical requirements and formalities." *Commonwealth v. Harris,* 231 Mass. 584, 121 N.E. 409, 410.

To require a showing of prejudice could create situations where the testimony of grand jurors would be necessary. Certainly a prosecuting attorney, such as in this case, would not admit prejudicial actions either of himself or his assistants. Who else could testify to show if any prejudice existed? The record of the proceeding would not reflect the full import of the situation, i. e. the raised eyebrows, the tone of voice, the questioning glance etc. Since judges are not permitted to be present to monitor the hearings, the testimony of the jurors would be the only source of information and we cannot permit the integrity of the process to be breached by post-indictment interrogations. There is a uniform policy among all states that grand jury proceedings must be secret and insulated from all outside influences. It is our duty to see that the rights of every citizen are protected, even those accused of an infamous crime.

Therefore, the writ of prohibition will issue to prevent this matter from proceeding to trial on the present indictment and respondent is directed to order the indictment quashed and the charges dismissed.

IT IS SO ORDERED.

McMANUS, C. J., and EASLEY and PAYNE, JJ., concur.