Merrimack
No. 97-343

## THE STATE OF NEW HAMPSHIRE

v.

## DENNIS A. SMITH

July 13, 1999

*Philip T. McLaughlin*, attorney general (*Malinda R. Lawrence*, assistant attorney general, on the brief, and *Janice K. Rundles*, senior assistant attorney general, orally), for the State.

*Donald E. Bisson* and *Risa Evans*, assistant appellate defenders, of Concord (*Mr. Bisson* on the brief, and *Ms. Evans* orally), for the defendant.

HORTON, J. The defendant, Dennis A. Smith, was convicted of four misdemeanors and sentenced to extended prison terms under RSA 651:6 (1996) (amended 1996, 1997, 1998) following a jury trial in the Superior Court (*Manias*, J.). The defendant argues on appeal that: (1) his sentences should be vacated because he was not charged by indictments; (2) the evidence was insufficient to sustain one of the convictions; and (3) he was denied a unanimous jury verdict by the trial court's instruction. We affirm.

While on patrol the morning of August 26, 1995, Northfield Police Officer William Whitcher observed the defendant's automobile parked outside the residence of Valerie Morin. Officer Whitcher believed that a restraining order prohibited the defendant's presence there. Whitcher attempted to call Morin to determine whether the order remained in effect. The defendant answered and hung up on the officer. When Whitcher called back, Morin answered and confirmed that the restraining order was still in effect.

Whitcher and Tilton Police Officer Owen Wellington met at the Morin residence to arrest the defendant. The officers found the defendant hiding behind a neighbor's cellar door. Whitcher asked the defendant to step out from the cellar. When the defendant emerged, Whitcher told him that he was under arrest for violating a court order.

The defendant responded that the officers would not be arresting him. Whitcher grabbed the defendant's shirt, but the defendant pushed him back. Wellington attempted, without success, to subdue the defendant with pepper spray, and the defendant retreated into the cellar. After repeated requests to emerge from the cellar, the defendant finally surrendered to Wellington.

The defendant was subsequently charged by information with the following misdemeanors: (1) violation of a restraining order, *see* RSA 173-B:8, III (Supp. 1998); (2) criminal trespass, *see* RSA 635:2, I, II (1996); (3) simple assault, *see* RSA 631:2-a (1996); and (4) resisting arrest, *see* RSA 642:2 (1996). The resisting arrest information alleged:

1. Dennis Smith knowingly interfered with Northfield Police Officer William Whitcher, who was seeking to effect the

arrest of Dennis Smith; 2. Dennis Smith interfered with Officer Whitcher by running away when ordered to stop by Officer Whitcher; 3. Dennis Smith recognized Officer Whitcher as a law enforcement official; 4. Dennis Smith committed the above act knowingly.

The State notified the defendant of its intention to seek extended prison sentences under RSA 651:6, based on the defendant's prior convictions. The trial court denied the defendant's motion to strike the State's notice. At the close of the State's case, the defendant moved to dismiss the resisting arrest information on the ground that there was insufficient evidence on which to base a conviction. The court denied the motion to dismiss. The defendant also objected to the court's resisting arrest instruction because it was not tailored to the facts alleged in the information. The jury returned guilty verdicts on the four charges, the court imposed four consecutive extended sentences of two to five years, and this appeal followed.

The defendant first argues that the trial court erred in sentencing him to prison terms exceeding one year for crimes charged by information. RSA 601:1 (Supp. 1998) provides that "[n]o person shall be tried for any offense, the punishment of which may be death or imprisonment for more than one year, unless upon an indictment found against such person by the grand jury." According to the defendant, RSA 601:1 and Part I, Article 15 of the New Hampshire Constitution require the State to charge a misdemeanor by indictment when it seeks an enhanced prison term in excess of one year. The defendant contends that because RSA 601:1 refers to the duration of incarceration and not to offense classification, misdemeanors punishable through extended terms are implicated by its unambiguous language.

"On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Woods*, 139 N.H. 399, 400, 654 A.2d 960, 961 (1995) (quotation omitted). "[W]e turn first to the plain meaning of the words used." *Larose v. Superintendent, Hillsborough County Correction Admin.*, 142 N.H. 364, 366, 702 A.2d 326, 328 (1997). Because it is unclear whether RSA 601:1 refers to sentence enhancements or simply to the maximum generally applicable sentence, we must look beyond the plain language to determine the legislature's intent. *See id.*

RSA 601:1 has remained in its present substantive form since 1867, *see* GS 242:1 (1867), while the criminal statutes which drive it underwent comprehensive revision in 1971, *see State v. Perra*, 127

N.H. 533, 536, 503 A.2d 814, 816 (1985). One aspect of the recodification was the enactment of an extended sentencing provision permitting the superior court to impose prison sentences in excess of one year in certain misdemeanor cases. *See* RSA 651:6. Prior to 1971, misdemeanor sentences did not trigger the current version of RSA 601:1, although felony sentences did. *Cf. State v. Webster*, 105 N.H. 415, 417-18, 200 A.2d 856, 858 (1964). By referring to the punishments of death or imprisonment for more than one year, the legislature intended that felonies be charged by way of indictment. We suspect that the legislature, in enacting the Criminal Code, never considered whether misdemeanors punished through extended terms exceeding one year would require indictments.

 We have held that RSA 601:1 should be considered in conjunction with Part I, Article 15 of the New Hampshire Constitution. *State v. Erickson*, 129 N.H. 515, 518-19, 533 A.2d 23, 24-25 (1987). Part I, Article 15 establishes that "[n]o subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." "Whatever the meaning of the concluding words of this article, it will not be questioned that the common law right to a lawful accusation by a grand jury is among the rights safeguarded by the Bill of Rights." *State v. Canatella*, 96 N.H. 202, 204, 72 A.2d 507, 508 (1950) (citations and quotation omitted). *Canatella*, however, does not confer upon an alleged misdemeanant the right to a grand jury indictment because in *Canatella* the defendants appealed felony convictions.

> In the case of misdemeanors, the requirement of an information filed by a sworn public officer, learned in the law, who has no motive other than to protect and promote the public interest, and whose duty it is as much to secure the innocent from persecution as to prosecute the guilty, affords a protection against unfounded and malignant charges at least equal to that afforded by the grand jury in the case of felonies.

*State v. Gerry*, 68 N.H. 495, 499, 38 A. 272, 274 (1896) (quotation and citation omitted). Consistent with the New Hampshire Constitution, the State may charge a misdemeanor through an information. *See id.; State v. Dover*, 9 N.H. 468, 471 (1838).

It appears that RSA 601:1 is simply a codification of the common law rule that felonies must be charged by indictment. Having

determined as matters of statutory and constitutional law that misdemeanors may be charged by information, we must next determine whether the imposition of an extended term exceeding one year effectively converts a misdemeanor into a felony for charging purposes. *See Smith v. United States,* 304 A.2d 28, 33 (D.C.), *cert. denied,* 414 U.S. 1114 (1973).

As noted, Part I, Article 15 incorporates the common law governing the initiation of prosecutions. The Fifth Amendment to the United States Constitution, which provides that capital or infamous crimes must be charged by indictment, was also based on the common law. *See Mackin v. United States,* 117 U.S. 348, 350-51 (1886). We examine precedent interpreting the common law and the Fifth Amendment for guidance.

The function of the grand jury at common law was to protect citizens from improper charging decisions when the consequence might be an infamous punishment. *See Gerry,* 68 N.H. at 498-99, 38 A. at 273-74; *Ex parte Wilson,* 114 U.S. 417, 423-24, 426 (1885). At common law, therefore, the nature of a crime's punishment determined whether it was a felony, or "infamous" crime, and as a consequence chargeable only by indictment. *Mackin,* 117 U.S. at 350-51. Incarceration in a state prison was traditionally recognized as an infamous punishment. *See In re Claasen,* 140 U.S. 200, 204-05 (1891); *Ex parte Wilson,* 114 U.S. at 428. However, "the question is[] whether [the crime] is one for which the statute authorizes the court to award an infamous punishment, and not whether the punishment ultimately awarded is an infamous one." *Fitzpatrick v. United States,* 178 U.S. 304, 307 (1900) (quotation omitted). "The punishment . . . which determines the question of infamy is that which is related to the offense itself . . . ." *Harvin v. United States,* 445 F.2d 675, 678 (D.C. Cir.) (en banc) (per curiam), *cert. denied,* 404 U.S. 943 (1971).

■ A potential sentence enhancement based on prior convictions, *see* RSA 651:6, I(c), is not punishment related to the offense itself. *See Smith,* 304 A.2d at 31-32. Nor is it punishment for the prior convictions themselves. Rather, the extended term is punishment for the defendant's recidivism. We, therefore, conclude that the portion of the extended terms that exceed the maximum generally applicable sentence did not transform the charged offenses into crimes which must be charged by indictment.

Finally, we disagree with the defendant's position that *Kiluk v. Potter, Administrator,* 133 N.H. 67, 572 A.2d 1157 (1990), compels a contrary holding. We did not address in *Kiluk* the question whether

an extended term renders a misdemeanor the equivalent of a felony, thereby requiring an indictment consistent with RSA 601:1 and Part I, Article 15. Instead, we held that the district courts lack jurisdiction to impose extended terms because their jurisdiction is defined in Part II, Article 77 by the penalties they may impose. *Kiluk*, 133 N.H. at 69-70, 572 A.2d at 1158. We declined to interpret Part II, Article 77 as simply defining the type of offense triable in the district courts because our analysis was controlled by the clear limitation on subject matter jurisdiction found in the constitution. *See id.* Our decision in *Kiluk* does not preclude us from interpreting RSA 601:1 and Part I, Article 15 consistent with the common law rule that felonies must proceed by way of indictment; nor does it prevent us from concluding that felony status is determined from the punishment ascribed by the legislature to the offense itself. This case is not analogous to one involving a determination of the limits of subject matter jurisdiction, *cf. Appeal of Somersworth School Dist.*, 142 N.H. 837, 841, 713 A.2d 386, 389 (1998); nor does Part I, Article 15 expressly or implicitly mandate that extended terms be charged through indictments.

The defendant next argues there was insufficient evidence to convict him of resisting arrest. We view the trial evidence, "and all reasonable inferences drawn therefrom, in the light most favorable to the State, and uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Graham*, 142 N.H. 357, 360, 702 A.2d 322, 324 (1997) (citation omitted). The defendant bears the burden of establishing that the evidence was insufficient to prove his guilt. *State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985).

The defendant contends that because the State did not demonstrate that he ran when ordered to stop by Officer Whitcher, as is alleged in the information, his guilt was not proven. While the State is required to plead all the elements of an alleged crime in an information, *see State v. LeClair*, 126 N.H. 479, 480, 493 A.2d 498, 499 (1985), it is not obligated to plead facts beyond those necessary to identify the specific offense charged, *see State v. Therrien*, 129 N.H. 765, 770, 533 A.2d 346, 349 (1987). An information need only ensure that a defendant can prepare for trial and avoid being subjected to double jeopardy. *See id.* at 770, 533 A.2d at 348. Once these goals are accomplished, "there is no further and independent requirement to identify the acts by which a defendant may have committed [the] offense, or to limit proof of guilt to acts specifically pleaded." *Id.* at 770, 533 A.2d at 349. The defendant does not argue

that his ability to prepare for trial or his right against double jeopardy was compromised by vagueness in the charging document.

Resisting arrest requires knowing or purposeful physical interference with a person recognized as a law enforcement officer who is seeking to make an arrest or detention. *See* RSA 642:2. The State factually identified the charged offense by alleging in the information the date and location of the crime and that the defendant "interfered with Officer Whitcher by running away when ordered to stop by Officer Whitcher." Whitcher testified that he told the defendant he was under arrest for violating a court order, that the defendant responded that he would not be arrested, that Whitcher grabbed the defendant's shirt, and that the defendant broke free and retreated into the cellar. Officer Wellington testified that this sequence occurred "fairly quick[ly]."

 A jury could rationally conclude from this evidence that the defendant resisted arrest in a manner consistent with the identifying facts set forth in the information. The "gravamen of the offense charged," *State v. Miner*, 122 N.H. 86, 88, 441 A.2d 1150, 1151 (1982), was that the defendant fled when Officer Whitcher attempted to arrest him. Although Whitcher never told the defendant to stop, the officer told the defendant he was under arrest and physically attempted to stop him by grabbing his shirt. The defendant then quickly retreated into the cellar, an action reasonably consistent with running away. Indeed, defense counsel conceded below that the defendant's retreat into the cellar constituted fleeing or running away. The variance between the information and the evidence is minimal. We long ago repudiated the argument that an immaterial variance between the proof and the facts alleged in a charging document is fatal to the prosecution. *See State v. Rousten*, 84 N.H. 140, 142-43, 146 A. 870, 871-72 (1929). Accordingly, we reject the defendant's sufficiency of the evidence argument.

Lastly, the defendant argues that the trial court's failure to instruct the jury on the factual predicate alleged in the resisting arrest information denied the defendant his right to a unanimous jury verdict. The defendant contends that the nature of the evidence and variance between the proof and the information permitted the jury to reach a guilty verdict on different factual predicates, and thus the trial court's refusal to give a specific unanimity instruction was error. The defendant asserts that

> some of the jurors may have believed that [he] resisted arrest by hanging up the phone when the officer called and told him he was under arrest. Some may have believed the

resisting took place when [he] left through the cellar door. Some may have believed the culpable act was the pushing of the officer, or the retreating into the cellar. Others may have believed that the resisting was a result of [his] refusing to be handcuffed and being sprayed with pepper spray. Still others may have believed that the culpable act was not exiting the cellar when the officers repeatedly requested that he do so.

■ A general unanimity instruction is usually sufficient to ensure a unanimous jury verdict. *State v. Greene*, 137 N.H. 126, 130, 623 A.2d 1342, 1345 (1995). The trial court must provide a specific unanimity instruction where a genuine possibility of juror confusion exists. *See United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir.), *cert. denied*, 493 U.S. 969 (1989). For instance, "the nature of the evidence, questions from the jury, some variance between the proof and the indictment, or ambiguous supplementary instructions from the court" may require the court to instruct the jury that substantial agreement is required on a certain set of facts. *Greene*, 137 N.H. at 130-31, 623 A.2d at 1345 (quotation omitted). We consider, in the context of the charging document, the whole trial, and the entire jury instruction, whether a conscientious juror would have understood the prerequisite of agreement on the essential facts. *Cf. United States v. Washington*, 106 F.3d 983, 1013 (D.C. Cir.), *cert. denied*, 118 S. Ct. 446 (1997); *Anguiano*, 873 F.2d at 1320-21 & n.4.

The trial court instructed the jury on the elements of resisting arrest and the requirement of a unanimous verdict. Prior to the opening statements, the clerk read the resisting arrest information to the jury. The information alleged and identified a single offense. *See United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir.), *cert. denied*, 479 U.S. 839, 844 (1986). The prosecutor, in both her opening and closing arguments, asserted that the defendant resisted arrest by retreating into a cellar while Officer Whitcher was attempting to arrest him. The evidence supported the prosecutor's argument and was not at material variance with the identifying facts alleged in the information. *See id.* The obvious essential culpable act of resisting arrest, as charged, demonstrated, and argued by the State, occurred when the defendant fled from Officer Whitcher while the officer actually attempted to arrest him.

■ Even if the jury could have broken down the defendant's course of conduct into multiple incidents of resisting arrest, *but cf. State v. Giwosky*, 326 N.W.2d 232, 237-38 (Wis. 1982) (continuous course of assaultive conduct over short period constitutes single

offense), the acts the defendant has parsed out to demonstrate juror confusion are dissimilar to the essential culpable act and would have been perceived by a conscientious juror as part of the course of events surrounding its commission, *see Anguiano*, 873 F.2d at 1320-21. This is not a case where the jury was faced with evidence of two or more separate criminal acts matching the factual description given a single offense in a charging document. *See, e.g., State v. Corliss*, 539 A.2d 557 (Vt. 1987). We conclude there was no genuine possibility of juror confusion as to the charged essential culpable act and the court's general instruction was adequate to ensure a unanimous verdict.

We deem waived arguments the defendant raised in his notice of appeal but did not brief. *Brown v. Bonnin*, 132 N.H. 488, 491, 566 A.2d 1149, 1151 (1989).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.