Chapman v. Anthem, et al.          CV-03-480-PB  05/12/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Paul Chapman**

    **v.**                              **Case No.  03-CV-480-PB**
                                           Opinion No. 2005 DNH 080

**Anthem Health Plans of**
**New Hampshire, Inc. and**
**Matthew Thornton Health Plan**


MEMORANDUM AND ORDER

Paul Chapman claims that Anthem Health Plans of New Hampshire, Inc. and Matthew Thornton Health Plan, Inc. (collectively "Anthem") have breached their contractual obligation to cover the cost of a surgical procedure known as Intradiscal Electrothermal Therapy ("IDET").  Anthem has moved for summary judgment, claiming that IDET is an uncovered "Experimental/Investigational" procedure (Doc. No. 19).  For the reasons set forth in this order, Anthem's motion is denied.


I.  BACKGROUND

A.  **The Policy Certificate**

Chapman is insured under an Anthem health insurance policy through his wife's employer, the City of Rochester, New

Hampshire. Anthem's policy Certificate outlines the scope of Chapman's coverage, as well as number of pertinent policy exclusions. The exclusion at issue states, in relevant part, that

> Anthem BCBS will not pay for services or supplies which Anthem BCBS determines in its sole discretion, are Experimental/Investigational in nature or for the covered services related to such Experimental/ Investigational services. The Medical Director of Anthem BCBS will have authority to determine all questions in connection with whether the use of any treatment, procedure, facility, equipment, device or supply (each of which is hereafter called a "service") is Experimental/Investigational as follows:
>
> In making the determination, the Medical Director . . . may require that demonstrated evidence exists (as reflected in the published Peer Review Medical Literature), as follows to determine that a service is not experimental:
>
> 1. that the service has a proven positive net health outcome; such evidence must include well designed investigations that have been reproduced by non-affiliated authoritative sources with measurable results supported by the positive endorsements of national medical bodies or panels regarding scientific efficacy and rationale;
>
> 2. that, over time, the service leads to improvement in health outcomes, i.e., the beneficial effects outweigh any harmful net effects;
>
> 3. that the service is more effective in improving net health outcomes than established technology;

4.    that the improvement in health outcomes is achievable in standard conditions of medical practice outside clinical investigatory settings . . .

The policy also states that

Peer Review Medical Literature means two or more United States scientific publications, for which require [sic] manuscripts submitted to acknowledged experts inside or outside the editorial office for their considered opinions or recommendations regarding publication of the manuscript.  Additionally, in order to qualify as Peer Review Medical Literature, the manuscript must actually have been reviewed by acknowledged experts before publication.

B.    **Chapman Opts to Undergo IDET**

Chapman suffered from debilitating back pain for several years before he asked Anthem to approve the IDET procedure.  He initially sought treatment from Dr. Edwin Charle, M.D., his primary care physician, who approached Chapman's case conservatively, and ultimately without success.  Believing more aggressive care was in order, Dr. Charle referred Chapman to Dr. Carlos Palacio, M.D., who, in turn, referred Chapman to Dr. Nathan Jorgensen, M.D., of the Seacoast Pain Institute in Rochester, New Hampshire.  In October 2002, after reviewing Chapman's history, Dr. Jorgensen recommended that Chapman undergo IDET.

IDET is designed to address back pain originating from a damaged disc.  A needle is inserted into the affected disc and a wire is threaded down the needle and into the disc where it is heated to upward of 190° Fahrenheit for 14 to 17 minutes.  This heating process is thought both to repair cracks and fissures in the disc and to destroy small nerve fibers that may be the source of the patient's pain.  IDET was approved by the Food and Drug Administration ("FDA") in 2000.

Chapman asked Dr. Jorgensen to seek approval from Anthem for the IDET procedure in December 2002.  Dr. Jorgensen submitted two studies with his request for coverage.  The first study, authored by Jeffrey A. Saal, M.D. and Joel S. Saal, M.D., was published in the May 2002 edition of *Spine*.  The second study, authored by Nikolai Bogduk, M.D., and Michael Karasek, M.D., was published in the September 2002 edition of *The Spine Journal*.

C.   **Anthem's Initial Review of Chapman's Policy**

Anthem rejected Chapman's request for coverage in a letter dated December 23, 2002.  Rather than commenting directly on the studies submitted by Dr. Jorgensen, Anthem cited only its own policy on IDET.  This policy concludes that IDET is

-4-

"investigational" for all uses and conditions. The policy cites two surveys of peer reviewed medical literature on IDET, one developed by the Blue Cross and Blue Shield Association Technology Evaluation Center ("TEC") and published in August 2002, the other by Winifred S. Hayes, Inc. ("Hayes") and published in April 2001. The TEC survey criticizes early research on IDET for failing to properly test the net health benefits of IDET against an ideal control group. It also criticizes the research for failing to consider whether the net benefits of the procedure were caused by the placebo effect. The Hayes survey offers similar criticisms and additionally expresses concern that the net health benefits of IDET had not been confirmed by follow-up data.

D. **The First-Level Appeal of Anthem's Decision**

Chapman postponed his surgery and appealed the denial of his claim. The appeal was overseen by Dr. Richard LaFleur, M.D., an Anthem Associate Medical Director, who relied again on Anthem's policy to uphold Anthem's initial decision to deny benefits. Chapman was notified of this decision by letter. In it, Anthem stated only that IDET was considered "Experimental/ Investigational." Chapman was instructed to "refer to the

-5-

enclosed rule, protocol or guideline on which this determination was based" for further explanation. No such information was enclosed. When Chapman sought the referenced material, Anthem failed to respond.

## E. The Second-Level Appeal of Anthem's Decision

Not satisfied with Anthem's decision, Chapman requested a second-level internal appeal. The policy Certificate states that second-level appeals shall be considered by an Appeal Committee comprised of Anthem employees. Typically, the Committee conducts a hearing during which Anthem's reasons for denying coverage are explained to the claimant. Chapman participated in the hearing by telephone. At no point during the hearing, however, were the publications submitted by Dr. Jorgensen raised or otherwise addressed.

A month later, in March 2003, Chapman learned that Anthem had rejected his second-level appeal. The letter conveying the result again explained only that IDET was "Experimental/ Investigational," and therefore that the policy did not provide coverage for it. Seeking a more detailed explanation, Chapman requested copies of the guidelines Anthem relied on in denying his appeal. Anthem never responded to this request.

Ultimately, Chapman and his wife decided to pay for the procedure on their own and, on November 10, 2003, Chapman successfully underwent IDET.  He has since experienced significant pain relief and has been able to return to work.  Chapman again requested coverage for the IDET procedure on January 8, 2004.  To date, neither Chapman nor any of his representatives have received a decision on his most recent claim.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A trial is necessary only if there is a genuine factual issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

In ruling on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the non-moving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citation omitted). Neither conclusory allegations, improbable inferences, nor unsupported speculation, however, are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

## III.  DISCUSSION

### A.  The Effect of the "Sole Discretion" Provision

As a threshold matter, this case requires the court to interpret language set forth in Anthem's insurance policy.  That language vests Anthem with "sole discretion" to determine whether a policy is experimental or investigational.  As in all contract cases, the interpretation of language in an insurance policy is a question of law.  See Peerless Ins. v. Vt. Mut. Ins. Co, 151 N.H. 71, 72 (2004);  Wilson v. Progressive Northern Ins. Co., 868 A.2d 268, 273 (N.H. 2005).  The court must "construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole."  Wilson, 868 A.2d at 273.

Anthem has clearly and unambiguously reserved to itself "sole discretion" to determine whether a treatment is experimental or investigational.  A literal reading of this provision would thus render Anthem's decision on this point unreviewable.  The New Hampshire Supreme Court has recognized, however, that provisions of this sort do not vest the drafter with absolute power.  Instead, it has held that an implied

-9-

contractual obligation of good faith and fair dealing arises "where a contract 'by word or silence . . . invests one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value.'" Ahrendt v. Granite Bank, 144 N.H. 308, 312-13 (1999) (quoting Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989)).

In the present case, Anthem's implied duty to act in good faith obligates it to act reasonably in determining whether IDET is an experimental procedure. See Ahrendt, 144 N.H. at 313. Whether Anthem has done so is a question that should be answered on the basis of the administrative record.

B.    **The Reasonableness of Anthem's Exercise of Discretion**

Chapman claims that Anthem's failure to consider the 2002 Bogduk and Karasek study, and its failure to independently review the 2002 Saal and Saal study, constitutes a breach of its duty to exercise its discretion reasonably. I agree.

The policy Certificate provides that "in making the determination" as to whether a treatment is "Experimental/ Investigational," Anthem may require a claimant to demonstrate,

-10-

through "Peer Review Medical Literature," that the following set of circumstances exist: (1) that the service has a proven positive net health outcome; (2) that, over time, the service leads to improvement in health outcomes; (3) that the service is more effective than established technology; and (4) that improvements are attainable outside clinical investigatory settings. According to the policy, Peer Review Medical Literature means "two or more United States scientific publications submitted to experts." Only "well designed investigations" "reproduced by non-affiliated authoritative sources," however, need be considered.

Anthem's failure to consider studies that may meet the criteria set forth above would constitute a breach of its good faith obligation to abide by the terms of its own policy. Cf. Ahrendt v. Granite Bank, 144 N.H. at 312-313 (acknowledging that a bank's failure to "follow its own rules" could provide basis for the claim that the bank "breached an implied covenant of good faith"). The studies that Dr. Jorgensen submitted with his request for coverage plainly meet these criteria. Thus, Anthem had a duty to consider them in the course of its review.

That Anthem failed to do so is beyond question.  The record contains no evidence that Anthem ever considered the 2002 Bogduk and Karasek study, and the only evidence that Anthem considered the 2002 Saal and Saal study is a brief, partially complementary reference to the study in the TEC survey.[1]  Anthem's duty to act reasonably required it to more carefully consider the studies submitted on Chapman's behalf.

Anthem's primary response is to claim that the breach of its contractual obligation was not material.  I find this position to be untenable.  Both the 2002 Bogduk and Karasek study as well as the 2002 Saal and Saal study address a number of criticisms leveled by the TEC and Hayes surveys at the early research on IDET.  More importantly,  the new studies present two-year follow-up results from prior studies published in 2000.  This information is particularly pertinent given the fact that the status of an experimental or investigational procedure could change over time as more data on the procedure becomes available.

---

[1]  The reference in the TEC survey provided a brief analysis of the 2002 Saal and Saal study, lumping it together with three other studies that TEC praised for "consistently show[ing] improvements" in patients due to the use of IDET.

That these studies add cumulative weight to a growing body of scholarship that illustrates that IDET is both a safe and effective treatment for pain associated with disc disruption only further suggests that they merited independent review.[2] Anthem's failure to consider the studies thus constitutes a material breach of its duty to exercise its decision-making discretion reasonably.

Anthem seeks to cure its error by providing a number of post hoc justifications as to why these studies need not have been considered. One such criticism points to a statement in the 2002 Bogduk and Karasek study that suggests that its conclusions are not "definitive." Another is Anthem's claim that the 2002 Saal and Saal paper cannot be characterized as a "non-affiliated source."

Post hoc justifications offered at the summary judgment stage by parties who are presumed to be concerned more with

---

[2] Though it has no direct bearing on the decision in this case, I find it noteworthy that, in an insurance contract dispute, the Court of Appeals in Arkansas refused to classify IDET as "experimental," rooting its decision in evidence that IDET has been performed since 1997 and had a national success rate of 70 percent. See Dallas County Hosp. v. Daniels, 74 Ark. App. 177, 184 (2001)

advocacy than with properly evaluating a claim, however, will rarely cure failures that occurred in the course of a claim review. Cf. Glista v. Unum Ins. Co., 378 F.3d 113, 131 (1st Cir. 2004) (barring an insurer from relying on post hoc justifications for denying a claim in the ERISA context). I therefore reject these arguments as a basis for granting summary judgment in this case.

## C.    The Remedy for Abuse of Discretion: *De Novo* Review

The question that remains is the proper remedy for Anthem's breach. One possible remedy, which is common in ERISA cases, would be to remand for further consideration by Anthem with an instruction to address the overlooked evidence. See e.g., Cook v. Liberty Life Assur. Co. of Boston, 320 F.3d 11, 24 (1st Cir. 2003) (discussing remand option). I reject this approach because I can find no support for it in New Hampshire law and because it would impose no sanction on an insurer when it arbitrarily denies a claim without considering relevant evidence that is included in the administrative record. An alternative remedy would be to simply order Anthem to provide coverage based on the fact that it exercised its discretion unreasonably. Id. Although it is

-14-

common practice in insurance coverage cases to order an insurer to provide coverage when it materially breaches a contractual obligation to its insured, to do so in this case would leave open the possibility that Chapman might obtain coverage for an uncovered experimental procedure simply because Anthem failed to consider relevant but ultimately unpersuasive evidence in the record when it made its coverage decision. Rather than adopt either of these two extremes, I employ a middle ground approach that avoids the difficulties created by either alternative. Anthem will have an opportunity to demonstrate at trial that IDET was an experimental or investigational procedure when it denied Chapman's claim for coverage. However, its decision to deny Chapman's claim will be accorded no deference because it was made without considering relevant evidence that was included in the administrative record.

Viewing the dispute through this lens, I conclude that material issues of fact remain in dispute as to whether IDET should have been considered experimental or investigational when Anthem initially considered Chapman's claim. Aligned on each side of the case are medical experts who make competing claims

-15-

about the status of IDET in light of the various studies on IDET that were available at the time. Anthem's Medical Director, Dr. John Robinson, M.D., claims, for instance, that the 2002 Bogduk and Karasek study would not have been credited by Anthem because its selection of patients was not purely randomized. Decl. of Dr. Hurlin, M.D. at 7. Dr. Nicholas Bogduk, by contrast, argues that this deficiency did not disqualify research done on other treatments for which coverage was granted, and therefore that Dr. Robinson has purposely raised the "goal posts" in the IDET context to avoid liability. Decl. of Dr. Bogduk, M.D., PH.D., DSc at 13. This difference of opinion is but one type of material factual dispute that makes it impossible to grant summary judgment at this stage of litigation. To answer it, I would first have to determine which expert was more credible and then conclude which factual assertion to credit in light of this determination. Decisions of this sort are not appropriately rendered at the summary judgment stage of litigation. See DeNovellis v. Shalala, 124 F.3d 298, 308 (1997) (stating that a "judge's function is not himself. . . to weigh the evidence and determine the truth of the matter but to determine whether there

-16-

is a genuine issue for trial"); <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 55 (1st Cir. 2000) (stating that "for the purposes of summary judgment, we cannot weigh the credibility of witnesses").  I therefore refuse to render one here.

## III.  <u>CONCLUSION</u>

Anthem's motion for summary judgment claim (Doc. No. 19) is denied (Doc. No. 19).

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

May 12, 2005

cc:  Scott Harris, Esq.
     Peter Thompson, Esq.
     Donald Whittum, Esq.