Coos
No. 2004-594

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY LUCIER

Argued: September 14, 2005
Opinion Issued: November 30, 2005

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Andrew Winters*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. Following a jury trial in Superior Court (*Vaughan*, J.), the defendant, Timothy Lucier, was convicted of burglary, RSA 635:1 (1996), violation of a protective order, RSA ch. 173-B (2002 & Supp. 2005), and simple assault, RSA 631:2-a (1996). On appeal, he contends that the trial court erred by admitting certain evidence without first making a finding of its reliability. We affirm.

The jury could have found the following relevant facts. Since April 2002, the defendant had been dating Melody Chase, who lived next door to him. On November 2, 2003, after the defendant and Chase had an argument, Chase, Walter Plant and Michael Barton went to Tammy Crawford's apartment. Chase had earlier obtained a restraining order against the defendant, which was served upon him at his residence at approximately 8:45 p.m. Soon thereafter, the telephone rang at Crawford's residence. The caller ID indicated that the time was 9:04 p.m. and that the call was coming from Chase's residence. Crawford testified that, based upon her experience, the only people who usually called from that number were Chase and the defendant. Chase testified that she knew the time of the call because she looked up at the clock when the phone rang. Plant answered the phone and handed it to Chase who identified the caller as the

defendant. Chase heard the defendant call her a slut, and then hung up on him.

Approximately twenty or thirty minutes later, the defendant entered Crawford's apartment without knocking, and went into the living room where everyone was gathered. He then punched Barton in the face and, in the same act, also hit Chase. Thereafter, the defendant exited the apartment. Shortly after the police were called, Corporal William Colborn of the Lancaster police department arrived and saw the defendant "yelling and banging" on Crawford's apartment door. The defendant was then arrested. Colborn went into the apartment and took photographs, including a photograph of the caller ID which indicated that the call had been received at 9:04 p.m.

Prior to trial, the defendant filed a motion *in limine* seeking to exclude from evidence the photograph of the caller ID box and any testimony pertaining to its contents. The trial court denied the motion. During the trial, the defendant again objected on the same grounds to the admission of the photograph of the caller ID. The court denied the defendant's motion and admitted the photograph, noting that the State had laid "a foundation for admission of the photograph as a record or reflection of what [Colborn] saw." This appeal followed.

The defendant contends that the State did not prove the information photographed on the caller ID box was reliable. He argues that the trial court should have required the State to prove reliability before admitting the photograph.

The admissibility of evidence is generally within the trial court's discretion. *State v. Roldan*, 151 N.H. 283, 287 (2004). Absent an unsustainable exercise of its discretion, we will not reverse the trial court's decision. *Id.* To show that the trial court's exercise of discretion is unsustainable, the defendant must show that the decision was clearly unreasonable to the prejudice of his case. *Id.* We also review the trial court's decision on the reliability of scientific evidence deferentially, although we review some aspects of scientific evidence independently when its reliability or general acceptance is not likely to vary according to the circumstances of a particular case. *State v. Walters*, 142 N.H. 239, 242 (1997). The level of scrutiny we employ in our reliability inquiry will depend upon the complexity of the evidence involved and the impact the evidence likely will have on the trial itself. *State v. Dahood*, 148 N.H. 723, 726 (2002).

While the admissibility of caller ID evidence appears to be an issue of first impression in New Hampshire, other courts have considered the issue. The Virginia Court of Appeals held that a witness's testimony that

he recognized the defendant's number on a caller ID device as one he had seen in the past was sufficient to establish that the device was reliable. *See Tatum v. Com.* 440 S.E.2d 133, 136 (Va. App. 1994). We find compelling the reasoning of the Kansas Supreme Court: "We take judicial notice that the operation of caller ID units does not require any advanced training; . . . by merely pressing arrow buttons, the user could review prior calls that were made. This fact is so generally known or of such common notoriety within the territorial jurisdiction of the court that it cannot reasonably be the subject of dispute." *State v. Schuette,* 44 P.3d 459, 463 (Kan. 2002) (quotation and brackets omitted). Furthermore, "Caller ID is already in such widespread use that many judges would be willing to judicially notice [that the technology is reliable]. The reliability of the technology is both a matter of common knowledge and a matter capable of verification as to be beyond reasonable controversy." 3 M. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 901.6, at 700 n.10 (5th ed. 2001) (quotation omitted). Thus, because the information displayed on the caller ID box is not a matter so distinctly related to some science, profession, business, or occupation as to be beyond the knowledge of the average layman, the trial court did not err by admitting the evidence without any expert testimony.

■ Here, the testimony offered by the State's witnesses corroborated the time and place of the call. Crawford testified that the defendant had called her house from the number displayed on the caller ID on previous occasions. Similarly, Chase testified that the number displayed on the caller ID was the same as her residence's number and she recognized the defendant's voice on the phone. In addition, Chase testified that the defendant called after 9:00 p.m. because she looked up at the clock when the phone rang. Thus, there was sufficient evidence to demonstrate that the caller ID was operating properly. *See Schuette,* 44 P.3d at 463 (foundation requirement of reliability satisfied by witness testimony that caller ID device is or has been operating properly). Because there is sufficient evidence in the record to support the trial court's exercise of its discretion to admit the photograph of the caller ID and the testimony related to it, we find no error in the trial court's ruling.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.