Hillsborough-southern judicial district
No. 2005-189

THE STATE OF NEW HAMPSHIRE

v.

KEITH LACASSE

Argued: March 8, 2006
Opinion Issued: June 16, 2006

*Kelly A. Ayotte,* attorney general (*Simon R. Brown,* senior assistant attorney general, on the memorandum of law and orally), for the State.

*Andrew Winters,* assistant appellate defender, of Concord, on the brief, and *Richard C. Guerriero, Jr.,* public defender, of Keene, orally, for the defendant.

BRODERICK, C.J. The defendant, Keith Lacasse, appeals his conviction for knowingly using an on-line computer service to solicit a person whom he believed to be a child under the age of sixteen to engage in sexual intercourse. *See* RSA 649-B:4, I (Supp. 2005). He argues that the Superior Court (*Groff,* J.) erred by denying his motion to dismiss because there was insufficient evidence to establish that he believed the person he solicited to be under the age of sixteen. We affirm.

The jury could have found the following facts. On November 30, 2003, the defendant went to his cousin's house to watch a football game. While there, he used his cousin's computer to enter an America Online "chat room" devoted to the subject of New Hampshire romance. The chat room could be used by a participant to observe or take part in an ongoing,

"public" conversation among all the entrants in the room, and also to engage in a private conversation with one particular entrant through use of "instant messaging." Each participant uses a "screen name" of choice which appears on the computer screen for all entrants to see. An entrant may also create a "profile" which purports to provide some description of the person using the screen name. Entrants can choose to access another participant's profile but need not do so in order to remain in the chat room, engage in the public conversation, or have a private conversation through instant messaging.

On the afternoon of November 30, the defendant used his cousin's screen name "Jay Paul 29." Meanwhile, Sergeant Richard Mello of the Hollis Police Department also entered the same chat room under the screen name "JennyNHJenny" with the following profile:

Name: Jenny
New Hampshire
Female 14
Oh ya...im single! ;)

Hobbies & Interests: Hangin' & partying w/friends
.......do u need a smile?

Mello assumed the identity of a fourteen-year-old girl for the purpose of conducting an undercover investigation into the solicitation on the internet of minors to engage in sexual conduct. While in the chat room, the defendant initiated a private conversation with "JennyNHJenny" by sending an instant message as "Jay Paul 29." During the approximately one-hour conversation, the two discussed meeting to engage in sexual intercourse. At one point in the conversation, "JennyNHJenny" gave "Jay Paul 29" her telephone number and told him to call her after 2:00 p.m., once her parents had left the house. "Jay Paul 29" called the number, an undercover phone line at the Hollis Police Department, and Officer Tracey Dunne answered, posing as "JennyNHJenny." After some conversation, they agreed to meet at a designated time and location in Hollis.

After the call concluded, Sergeant Mello determined that insufficient police coverage existed to safely monitor the arranged meeting. Officer Dunne attempted to contact the defendant on-line in the chat room to cancel the meeting, but the defendant's cousin responded, informing her that the defendant had already left. Officer Dunne then dressed undercover and proceeded to the meeting for the purpose of identifying the defendant. Once she located the defendant, she informed him that they would need to meet on a different occasion because her "parents" or "father" had unexpectedly returned home early. The defendant then gave

Officer Dunne his phone number so that they could arrange another meeting.

According to the defendant's cousin, once the defendant returned from the meeting, he acted "nervous," worrying that "JennyNHJenny" had been looking at his license plate. The following day, Officer Dunne called the defendant and left him a message as "JennyNHJenny." Upon hearing her message, the defendant contacted his cousin, expressing reservations about returning the call. The defendant called "JennyNHJenny," spoke with Officer Dunne and repeatedly asked her whether she had looked at his license plate. The defendant was later arrested and charged under RSA 649-B:4, I, with using a computer on-line service to solicit a person whom he believed was a child under the age of sixteen to engage in sexual intercourse.

At trial, the defendant moved to dismiss the charge. He argued, among other things, that the evidence was insufficient to establish beyond a reasonable doubt that he believed "JennyNHJenny" was a child under the age of sixteen. The court denied the motion, and the jury returned a guilty verdict. This appeal followed.

To succeed on a motion to dismiss, the defendant bears the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in the State's favor, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged. *State v. Littlefield*, 152 N.H. 331, 349 (2005). "When reviewing the trial court's denial of a motion to dismiss, we view the evidence and reasonable inferences arising therefrom in the manner most favorable to the State," even when the evidence presented is solely circumstantial. *Id.* at 349-50. Further, we review the evidence in context, and not in isolation. *Id.* at 350. When the evidence is purely circumstantial, it must exclude all rational conclusions except guilt. *Id.* We emphasize, however, that "[t]he proper analysis is not whether every possible conclusion has been excluded but, rather, whether other *rational* conclusions based on the evidence have been excluded." *State v. Cobb*, 143 N.H. 638, 658 (1999).

The defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he believed "JennyNHJenny" was a child under the age of sixteen. He contends that no evidence was presented showing he reviewed the profile of "JennyNHJenny," which listed her age as fourteen, and the transcript of the on-line conversation makes no reference to her specific age. He argues that his statements during that conversation leave "serious doubt" that he knew she was under sixteen, and concludes that because the circumstantial evidence supports the rational inference that he believed "JennyNHJenny" to have been at least sixteen years old, his conviction must be reversed. We disagree.

Viewing the initial portion of the on-line conversation in the State's favor, a rational jury could have concluded beyond a reasonable doubt that the evidence excluded all rational conclusions except that the defendant believed "JennyNHJenny" to be fourteen as purported by the screen name profile. The defendant initiated the private conversation with "JennyNHJenny" at 1:06 p.m., asking whether she was looking "to meet a sweet guy." Within the first few minutes, he inquired about the size of her breasts and characteristics of her pubic area. The following conversation immediately ensued:

| JennyNHJenny [1:11 PM]: | age? |
|---|---|
| Jay Paul 29 [1:11 PM]: | do you like older guys? |
| JennyNHJenny [1:11 PM]: | yes |
| Jay Paul 29 [1:12 PM]: | is 30 too old for [you]? |
| JennyNHJenny [1:12 PM]: | no lol |
| Jay Paul 29 [1:13 PM]: | no? |
| JennyNHJenny [1:13 PM]: | no, Y? |
| Jay Paul 29 [1:14 PM]: | most people your age would not talk to someone my age |

Significantly, when "JennyNHJenny" inquired about the defendant's age, he immediately brought up the purported age discrepancy between them by asking, "do you like older guys?" He continued by asking whether "30 was too old for [her]" and stated that "most people *your age* would not talk to someone my age." (Emphasis added.) Viewing all inferences in the State's favor, the jury could have discerned that the only rational conclusion to be drawn from this initial exchange was that the defendant believed that "JennyNHJenny" would perceive a significant age discrepancy between them, with "JennyNHJenny" being the younger of the two. For the defendant to discern an age discrepancy, he obviously had some information about the age of "JennyNHJenny" in order to compare it with his own. The screen name "JennyNHJenny" itself provides no intrinsic reference to her age. Nor did the statements or questions offered by "JennyNHJenny," leading up to the defendant's apprehension, provide an intimation that she was any particular age. Indeed, at this initial juncture of their on-line conversation, the profile of "JennyNHJenny," which listed her age as fourteen, comprised the sole source of her purported age by which the defendant could have measured and compared his own age. Therefore, a rational jury could have determined beyond a reasonable doubt that the evidence excluded all rational conclusions except

guilt; namely, that the defendant believed that "JennyNHJenny" was under sixteen years old.

██ We observe that later portions of the on-line conversation, the phone dialogue between the defendant and Officer Dunne posing as "JennyNHJenny," and the defendant's nervous behavior after their meeting confirm that the defendant believed the person he conversed with on-line to be underage. For example, the defendant was concerned that "JennyNHJenny" was a "cop," and that he might incur legal ramifications for talking and meeting with her. Also, the proffered persona of "JennyNHJenny" throughout their conversations suggested a youthful teenaged girl, such as that she ran track, lived at home with her parents and needed to wait for her parents to leave the house that afternoon in order to talk to the defendant on the telephone. None of this later evidence, standing apart from the initial portion of the on-line conversation, demonstrates that the defendant believed "JennyNHJenny" to be under the age of sixteen. That evidence could support a rational conclusion that he believed "JennyNHJenny" to be youthful but at least sixteen. *See* RSA 639:3 (1996) (endangerment of child under eighteen years old). We, however, view the evidence in totality, *Littlefield*, 152 N.H. at 350, and because the defendant's initial interaction with "JennyNHJenny" would have permitted the jury to exclude all rational conclusions other than he had reviewed her profile, which listed her age as fourteen, we affirm the defendant's conviction.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.