Rockingham
No. 2005-646

THE STATE OF NEW HAMPSHIRE

v.

FREDERICK HUFFMAN

Submitted: November 8, 2006
Opinion Issued: January 17, 2007

*Kelly A. Ayotte*, attorney general (*Philip B. Bradley*, assistant attorney general, on the brief), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, by brief, for the defendant.

GALWAY, J. The defendant, Frederick Huffman, appeals the Superior Court's (*Coffey*, J.) rulings on his motions to suppress evidence, to exclude evidence, and to dismiss. We reverse and remand.

The record supports the following. In February 2001, a nursing home named Sunbridge for Portsmouth (Sunbridge) admitted the defendant's father, Herbert Huffman (Huffman). Huffman's income consisted of approximately $750 per month from social security and a pension of approximately $1,100 to $1,300 per month. The defendant, who had power of attorney for Huffman and jointly held some of Huffman's accounts, applied for Medicaid benefits on Huffman's behalf to assist with his medical fees. In August, Medicaid deemed Huffman eligible for benefits. As the defendant received Huffman's income, he deposited the money into an account at Newburyport Five Cents Savings Bank (Newburyport Bank) that he jointly held with Huffman. The defendant later deposited Huffman's income into an account at the Navy Federal Credit Union (NFCU), which they also held jointly.

It is undisputed that the defendant understood that all but $50 per month of Huffman's income, including social security, pension, and Medicaid payments, was obligated to Sunbridge. Despite this understanding, the defendant made only two payments of Huffman's money to Sunbridge: $1,900 in September 2001, and an equal amount in October 2001. Sunbridge was able to obtain some of Huffman's money from social security; however, by July 2003, the defendant owed $37,345.62 to Sunbridge. Due to this arrearage, Sunbridge contacted the Medicaid Fraud Unit in the Office of the Attorney General.

In November 2004, a grand jury issued a subpoena duces tecum for the defendant's financial records at Newburyport Bank and the NFCU. The State mailed the subpoenas to the banks instead of formally serving them; however, the banks nonetheless gave the defendant's financial records to the State. The grand jury subsequently indicted the defendant for theft by misapplication of property under RSA 637:10 (1996).

Prior to trial, the defendant moved to suppress the financial records, arguing, *inter alia*, that the State violated the New Hampshire Right to Privacy Act (Privacy Act), RSA 359-C:10 (1995), by failing to properly serve the grand jury subpoenas upon the banks. The trial court denied the defendant's motion, ruling that the defendant did not have standing to complain about a violation of the procedural rights of witnesses (the banks) that were not asserted by the witnesses.

The defendant also moved *in limine* to exclude the bank records based, *inter alia*, upon a violation of New Hampshire Rule of Evidence 902(11). The defendant argued that the State did not comply with the rule's authentication requirements. The trial court denied the motion.

A jury trial ensued. At the close of the State's case, the defendant moved to dismiss, arguing that the State failed to prove an element of the alleged crime. The trial court denied the motion. At the close of the defendant's case, the defendant unsuccessfully renewed his motion to dismiss. The jury found the defendant guilty of theft by misapplication of property.

On appeal, the defendant argues that the trial court erred by denying his: (1) motion to suppress; (2) motion *in limine;* and (3) motions to dismiss. We address each issue in turn.

*I. Motion to Suppress*

The defendant argues that the trial court should have suppressed the Newburyport Bank and NFCU financial records because the State failed to comply with the Privacy Act's requirements for serving the subpoenas. The Privacy Act and RSA 613:3 (2001) require in-person service of a subpoena for financial records on an out-of-state witness, the defendant argues, and the State's mailing of the subpoenas violated this requirement. The State responds that RSA 359-C:10, II permits grand jury subpoenas to be issued by mail instead of in person.

The interpretation of a statute is a question of law, which we review *de novo. Town of Hinsdale v. Town of Chesterfield*, 153 N.H. 70, 72 (2005). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.*

The provision of the Privacy Act at issue, RSA 359-C:10, states the following:

I. An officer, employee or agent of a state or local agency or department thereof may obtain financial or credit records under RSA 359-C:4, I(d), pursuant to a judicial subpoena or subpoena duces tecum only if:

(a) The subpoena or subpoena duces tecum is issued and served upon the financial institution or creditor and served upon or mailed to the customer . . . .

. . . .

II. Without limiting in any way the authority of the grand jury, a grand jury is authorized to and may, upon a resolution adopted by a majority of its members, obtain financial or credit records pursuant to a subpoena duces tecum bearing the authenticating signature of the clerk of court. The grand jury may appoint, by resolution, any person as its agent for purposes of receiving information set forth in the subpoena.

For the purposes of our analysis below, we assume without deciding that the Privacy Act applies to the service of a subpoena upon an out-of-state bank. We also assume without deciding that RSA 359-C:10 requires in-person service.

█ Even assuming that the State violated the in-person service requirement of RSA 359-C:10, that does not mean that suppression of the defendant's bank records is the appropriate remedy. We have previously held that the suppression of evidence obtained in violation of the Privacy Act is an appropriate remedy to vindicate the purpose behind the legislature's passage of the act. *State v. Stearns*, 130 N.H. 475, 484 (1988). We have also held, however, that "[f]or the defendant to be entitled to that remedy, it must be shown that the rights conferred on the defendant by the Privacy Act were violated." *State v. Sheedy*, 124 N.H. 738, 740 (1984). Accordingly, the defendant may only suppress the evidence obtained by the State if the State's failure to comply with the Privacy Act's in-person service requirement violated rights conferred on the defendant by the act.

█ The State's service to the banks by mail, instead of in person, does not violate any right granted to the defendant by RSA chapter 359-C. The purpose of the act is "to protect the confidential relationship between financial institutions and creditors and their respective customers." RSA 359-C:2. The defendant's confidential relationship with the banks receives no less protection if the grand jury's subpoena to the banks is mailed instead of delivered in person. Failure to properly serve the banks is purely a technical violation of the statute that does not infringe upon the

defendant's rights. We have recognized that purely technical violations of a different statute, RSA chapter 595-A, which governs search warrants, do not require the suppression of evidence seized by the State. *See State v. Saide*, 114 N.H. 735, 737-38 (1974). We conclude that the same reasoning applies in the instant case. Because the State's violation of the Privacy Act was purely technical and did not infringe upon any rights granted by the act to the defendant, suppression is not the appropriate remedy.

*II. Motion in Limine*

The defendant argues that the trial court erred by allowing the State to introduce bank records from Newburyport Bank and NFCU without properly authenticating them pursuant to New Hampshire Rule of Evidence 902(11). Rule 902(11) provides, in pertinent part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . .
>
> (11) *Certified domestic records of regularly conducted activity.*—The original or a duplicate of a domestic record of regularly conducted activity, which would be admissible under Rule 803(6), and which the custodian thereof or another qualified person certifies under oath—
>
> (A) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.

The defendant argues that the State failed to provide certifications that satisfied the clear requirements of Rule 902(11). The certification from Newburyport Bank failed to comply with Rule 902(11)(A), the defendant argues, because nothing in it states that the records were made at or near the time of the occurrence of the matters set forth, nor is there a statement that the records were made by or from information transmitted by a person with knowledge of those matters. The defendant further argues that neither the certification from Newburyport Bank nor the certification from NFCU complies with Rule 902(11)(C) because neither

certification establishes that the bank records were made by the regularly conducted activity as a regular practice.

The State responds that Newburyport Bank's declaration complies with Rule 902(11)(A) because the records sought to be admitted were monthly bank statements that bore the dates of the transactions at issue, thereby showing that the statements were prepared at or near the time of the occurrences set forth and were prepared by a person with knowledge. The State argues that both banks' declarations comply with Rule 902(11)(C) because, "in the context of these bank records, the certifications were sufficient." The State also argues that the trial court could have properly taken judicial notice that banks send monthly statements to customers and that those records are made at the time of the occurrence by a person with knowledge.

Despite the State's arguments, the trial court neither considered the bank records in conjunction with the certifications nor took judicial notice of the nature of bank statements. The record shows that the trial court based its evidentiary ruling exclusively upon the certifications:

> They may not have used the magic words referred to in 902:11 A, B, and C, specifically as they're quoted there, but in the context of the entire statements made by these keepers of the record, in their notarized certificates, they essentially indicated to us that these records were made at the time of the occurrence, that they were kept in the course of regularly conducted activity and that they were made by the regularly conducted activity as a regular practice.

It is this ruling that we must address.

■ "We generally review the trial court's rulings on evidentiary matters with considerable deference, and will not reverse the trial court's ruling on authentication absent an unsustainable exercise of its discretion." *State v. Knapp*, 150 N.H. 36, 37 (2003) (citation omitted). To show that the trial court's exercise of discretion was unsustainable, the defendant must show that the decision was clearly unreasonable to the prejudice of his case. *State v. Lucier*, 152 N.H. 780, 781 (2005).

The certification submitted by NFCU states:

*Certification Statement*

The undersigned is a duly authorized custodian of records of NAVY FEDERAL CREDIT UNION and has the authority to certify said records. The enclosed is a true copy of all the records described in the Subpoena/Customer Consent/Authorization

Form. Said records were prepared by the custodian or the personnel of NAVY FEDERAL CREDIT UNION in the ordinary course of business and were prepared from records which were themselves prepared at or near the time of the act, condition or event.

The defendant argues that this certification fails to comply with Rule 902(11)(C); however, the language of Rule 902(11)(C) is similar to language from Rule 803(6), the business records exception to the hearsay rule, which requires, in part, that it be "the regular practice of that business activity to make the [proffered] memorandum, report, record, or data compilation." N.H. R. Ev. 803(6). We have held that this requirement is satisfied by testimony that the proffered document "was made in the regular course of business." *Powell v. Catholic Med. Ctr.*, 145 N.H. 7, 17 (2000) (stating that the entirety of the business records exception requires the proponent of the document to elicit testimony regarding "the identity and mode of preparation of the proffered document, and ... that it was made in the regular course of business at or near the time of the transaction recorded"). Just as the "regular practice of that business" requirement in Rule 803(6) is satisfied by testimony regarding the ordinary course of business, so too should Rule 902(11)(C) be satisfied by a certified statement that the proffered records were prepared in the ordinary course of business. The NFCU certification states that the proffered records were prepared "in the ordinary course of business." Accordingly, the trial court properly ruled that NFCU's bank records satisfied the requirements of Rule 902(11)(C).

■ The certification submitted by Newburyport Bank is less complete than the certification from NFCU. Newburyport Bank's certification states:

Enclosed please find copies of bank documents requested per your subpoena.

I, Susan J. Cormier, of the Newburyport Five Cents Savings Bank, 63 State Street, Newburyport, Massachusetts 01950, hereby certify that the enclosed copies were made in good faith during the regular course of bank business. I further certify that the enclosed are true copies, and that I am the Keeper of Records.

As the defendant correctly argues, the Newburyport Bank certification does not comply with Rule 902(11)(A). The certification does not indicate that the proffered records were made at or near the time of the occurrence

of the matters set forth. As the trial court based the admission of the Newburyport Bank records solely upon this certification, we conclude that the trial court erred in admitting them. The admission of those records clearly unreasonably prejudiced the defendant's case because the State presented them for the purpose of proving that the defendant withdrew Huffman's money for his own benefit instead of paying Sunbridge. The State does not refute that it offered the evidence for this purpose or argue harmless error. Thus, we conclude that the trial court's exercise of discretion was unsustainable.

### III. Motions to Dismiss

The defendant argues that the trial court erred in denying his motion to dismiss because the State failed to prove a required element of theft by misapplication of property. Although we reverse the defendant's conviction due to the erroneous admission of the bank records, we must decide this issue because, if the evidence were insufficient, the Double Jeopardy Clauses of the State and Federal Constitutions would preclude a remand for a new trial. *See State v. Sweeney*, 151 N.H. 666, 672-73 (2005).

RSA 637:10 provides, in pertinent part:

> I. A person commits theft if he obtains property from anyone ... upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a third person, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he purposely or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own.

The defendant concedes that he exercised control over Huffman's income by power of attorney, that he knew that Huffman's income was obligated to Sunbridge, and that he did not make required payments to Sunbridge. The defendant argues, however, that the evidence presented at trial did not exclude the rational possibility that the defendant did not deal with Huffman's money as his own. The defendant argues that, as the representative payee for Huffman's income, the defendant's depositing of Huffman's money into an account controlled by the defendant cannot prove that he treated the money as his own.

To succeed on a motion to dismiss, the defendant bears the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in the State's favor, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged. *State v.*

*Lacasse,* 153 N.H. 670, 672 (2006). When reviewing the trial court's denial of a motion to dismiss, we view the evidence and reasonable inferences arising therefrom in the manner most favorable to the State, even when the evidence presented is solely circumstantial. *Id.* Further, we review the evidence in context, and not in isolation. *Id.* When the evidence is purely circumstantial, it must exclude all rational conclusions except guilt. *Id.* We emphasize, however, that the proper analysis is not whether every possible conclusion has been excluded, but whether other rational conclusions have been excluded. *Id.*

Although the defendant shared joint accounts with Huffman at Newburyport Bank and NFCU to help administer Huffman's finances, it is undisputed that all but $50 per month of Huffman's income was to go to Sunbridge. Evidence presented at trial included testimony that the defendant withdrew more money in cash from the accounts than he had put in, thus showing that he withdrew thousands of dollars of Huffman's money from the accounts. Once the money was withdrawn, there were no records of it, but evidence showed that it did not go to Sunbridge. The State also presented evidence that the police investigation did not find another bank account that the defendant had established to receive Huffman's money that the defendant withdrew.

The defendant argues that the State did not exclude the possibility that he withdrew the money and held it in protest of Sunbridge's care of Huffman, but never spent it. The State, however, presented testimony from Steven Woods, Sunbridge's administrator, who testified that he spoke with the defendant on the telephone on July 16, August 13, August 29, and October 16 of 2001, after Huffman had stayed at Sunbridge for months and had fallen five times. Woods testified that, during these phone calls, the defendant did not complain about the quality of Huffman's care, made no statement about withholding payments, and, to the contrary, stated that he would send the overdue payments to Sunbridge. Woods testified that, when he routed Huffman's Social Security payments to Sunbridge in November to protect the money from the defendant, he had no reason to believe that the defendant withheld payments because he was concerned about quality of care. Woods also testified that, even when Huffman did not fall for sixteen months, the defendant continued to withhold payments, thus weakening the correlation between the falls and the withholding of payment. The State also presented testimony from the business office manager at Sunbridge, who stated that she spoke to the defendant on June 25, 2003. The manager testified that the defendant never stated that he was unhappy with Huffman's care at Sunbridge and that he would send Sunbridge a check for at least $27,653 for arrearages. Additionally, the State presented testimony from two employees of the

department of health and human services (DHHS), both of whom testified that they never received multiple letters of complaint that the defendant alleged that he sent regarding his father's care at Sunbridge. The DHHS employees testified that, had the defendant sent the letters to DHHS, they would have seen them and investigated the quality of care that Huffman received.

██ Viewing all inferences in a light most favorable to the State, after a review of the record, we conclude that a rational jury could have found beyond a reasonable doubt that the evidence excluded all rational conclusions except that the defendant withheld payments from Sunbridge and dealt with Huffman's money as his own.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.