Hillsborough-northern judicial district
No. 2007-625

THE STATE OF NEW HAMPSHIRE

v.

GEORGE SIDERIS

Argued: April 30, 2008
Opinion Issued: May 16, 2008

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, George Sideris, appeals his conviction and sentence for violation of the New Hampshire Consumer Protection Act (CPA), RSA ch. 358-A (1995 & Supp. 2007). We affirm the conviction, vacate the sentence, and remand.

The record discloses the following facts. In October 2006, the defendant was working as a roofer at the home of Dirk Ruemenapp in Manchester. Ruemenapp's neighbor, David Prescott, saw the defendant working, and asked Ruemenapp if he would send the defendant over to discuss roofing work at Prescott's home. The defendant met Prescott at his home on October 12. During their meeting, Prescott and the defendant spoke about the work to be done, which Prescott requested be undertaken the following spring. Additionally, Prescott specifically requested that the defendant produce proof of insurance prior to beginning any work, and that the defendant obtain the proper building permit. The defendant agreed to both requests.

The next day the defendant presented Prescott with a quote for the roofing work. Prescott testified that the defendant said the quote was low because he had a small window of time to work on Prescott's roof as soon as he finished Ruemenapp's roof. Although Prescott had wanted the work to wait until the spring, he reluctantly agreed to it being done immediately as long as the defendant made some revisions to their agreement and produced proof of insurance. The defendant apparently agreed to these requests and then informed Prescott that he needed an $8,000 deposit for materials. Prescott, however, could only pay $4,000 at that time. Later that day, Prescott wrote the defendant a check, which was cashed within an hour.

Over the next few days the defendant, despite speaking with Prescott on numerous occasions, did not purchase materials, produce proof of insurance, obtain a building permit, or otherwise indicate that he would begin work. On October 18, the defendant requested additional money from Prescott, but Prescott refused to pay because the defendant could not account for the initial deposit. On October 25, Prescott made a telephone complaint about the defendant to the Manchester police. In response to the complaint, Detective Martin Swirko spoke with the defendant, who said that there had been a misunderstanding between him and Prescott. The defendant told Swirko that he would return Prescott's money.

The defendant and Prescott arranged to meet at Prescott's bank so that the money could be returned, but the defendant did not show up. Later that day, the defendant met with Prescott and the two had an "extensive and very unpleasant" conversation. Eventually, communication between the

men broke down entirely. In spite of further interactions with Prescott and the Manchester police, the defendant did not return Prescott's money and did not repair Prescott's roof.

As a result of the above, in December 2006 the defendant was indicted for felony theft by deception. He was later charged by information with one count of committing an unfair or deceptive business act or practice in violation of the CPA. After a jury trial, the defendant was acquitted on the theft charge, but convicted on the CPA violation. The Trial Court (*Abramson*, J.) sentenced him to twelve months in jail, two years of probation and a $2,000 fine. The fine, however, was suspended on the condition that he pay $4,000 in restitution by September 21, 2007. The defendant has not paid the restitution.

The defendant appeals, arguing that the trial court erred by: (1) denying his motion to dismiss the information on the ground that it failed to allege a CPA violation; (2) denying his motion to dismiss the information due to insufficient evidence; and (3) imposing an illegal sentence. We address each issue in turn.

The information charging the defendant with violating the CPA states, in relevant part, that the defendant committed an "**Unfair or Deceptive Business Act or Practice**" because:

> On or about October 25, 2006, at the home of David Prescott in Manchester, George Sideris, as the owner of Sideris and Sons, knowingly entered into a contract with David Prescott for the repair of a roof on Mr. Prescott's home in Manchester. Mr. Prescott gave George Sideris a deposit in the amount of $4,000 for the purchase of materials and installation of the roof. Despite repeated requests that the roof be repaired, George Sideris, DBA/Sideris and Sons, knowingly failed to provide the promised service or product and knowingly failed to return or caused Sideris and Sons to fail to return, monies paid by David Prescott . . . .

According to the defendant, the information fails to allege a criminal offense and is, therefore, insufficient.

■■ Consistent with the New Hampshire Constitution, the State may charge a misdemeanor through an information. *State v. Smith*, 144 N.H. 1, 4 (1999). While the State is required to plead all the elements of an alleged crime in an information, it is not obligated to plead facts beyond those necessary to identify the specific offense charged. *Id.* at 6. An information need only ensure that a defendant can prepare for trial and avoid being subjected to double jeopardy. *Id.* Once these goals are accomplished, there

is no further and independent requirement to identify the acts by which a defendant may have committed the offense, or to limit proof of guilt to acts specifically pleaded. *Id.* An element need not be stated in precise statutory language, if the information as a whole may fairly be understood to charge it. *State v. French*, 146 N.H. 97, 103 (2001).

■ RSA 358-A:2 (Supp. 2007) states that it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The statute then provides a non-exhaustive list of specific acts deemed to be unfair or deceptive. *See* RSA 358-A:2, I-XIV. For conduct not particularized by the CPA to qualify as unfair or deceptive, it must be of the same type as that proscribed in the enumerated categories. *State v. Moran*, 151 N.H. 450, 452 (2004). Although the general provision of the CPA is broadly worded, not all conduct in the course of trade or commerce falls within its scope. *ACAS Acquisitions v. Hobert*, 155 N.H. 381, 402 (2007). An ordinary breach of contract claim, for example, is not a violation of the CPA. *Moran*, 151 N.H. at 453.

According to the defendant, the information here alleges nothing more than a breach of contract to repair Prescott's roof, and, therefore, is insufficient to state a criminal violation of the CPA. We disagree. The information alleges that the defendant committed an unfair or deceptive act or practice, and that he did so by knowingly entering into a contract to perform a service, taking Prescott's money for that service, and, despite Prescott's repeated requests, knowingly failing to provide the service and knowingly failing to return the money.

■ The defendant contends that the information is insufficient because it does not allege any misrepresentation or other conduct akin to that enumerated in RSA 358-A:2. While the information does not use "misrepresentation," or some similar term, it does allege that knowingly taking Prescott's money and then not performing despite requests that he do so was an unfair or deceptive act or practice under the CPA. Whether his conduct was, in fact, unfair or deceptive in violation of the CPA, as opposed to an ordinary breach of contract, was a matter for the jury. To the extent the defendant believed a more specific statement of the crime was required, he could have requested a bill of particulars. *See State v. Chick*, 141 N.H. 503, 506-07 (1996). We conclude that the information as a whole could be fairly understood to charge a violation of the CPA, *French*, 146 N.H. at 103, because it described conduct of the type proscribed by the statute. *See, e.g.,* RSA 358-A:2, IX, XI. Accordingly, the information was sufficient.

The defendant next contends that the trial court erred in denying his motion to dismiss at the close of the State's case upon the ground that there

was insufficient evidence. The defendant argues that the evidence presented did not show his conduct to be so egregious as to violate the CPA.

To succeed on a motion to dismiss, the defendant bears the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in the State's favor, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged. *State v. Lacasse*, 153 N.H. 670, 672 (2006). When reviewing the trial court's denial of a motion to dismiss, we view the evidence and reasonable inferences arising therefrom in the manner most favorable to the State, even when the evidence presented is solely circumstantial. *Id.* Further, we review the evidence in context, and not in isolation. *Id.* When the evidence is purely circumstantial, it must exclude all rational conclusions except guilt. *Id.* The proper analysis is not whether every possible conclusion has been excluded but, rather, whether other rational conclusions based upon the evidence have been excluded. *Id.* We conclude that the trial court did not err.

In determining which commercial actions not specifically delineated are covered by the act, we have employed the "rascality" test. *Hobert*, 155 N.H. at 402; *see Barrows v. Boles*, 141 N.H. 382, 390 (1996). Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. *Hobert*, 155 N.H. at 402. The rascality test applies equally to civil and criminal matters. *Moran*, 151 N.H. at 452.

Recently, in *Moran*, the defendant contended that the trial court erred in concluding that he violated the CPA. *Id.* There, the defendant had entered into a contract with a homeowner to install siding and had received a deposit for the work. *Id.* at 450-51. After requesting to begin the work early, the defendant took an additional deposit for materials. *Id.* at 451. Thereafter, the defendant did not purchase materials and did not begin the work. *Id.* Despite repeated contacts with the homeowners, during which the defendant assured them that the work would be completed or their money returned, no work was done and the money was not returned. *Id.*

The defendant argued that his actions demonstrated only a breach of contract and did not rise to a violation of the CPA. *Id.* at 453. We disagreed and concluded that the trial court could reasonably have found that the defendant induced the homeowners into entering the contract when he did not have the intent to perform the work, and that he made misrepresentations to the homeowners in an ongoing effort to avoid performing the work or refunding the deposit. *Id.* at 453-54. We concluded that this conduct achieved a level of rascality sufficient to violate the CPA. *Id.* at 454.

We find *Moran* nearly indistinguishable from this case. Although the defendant contends that his actions were not as egregious as those of the

defendant in *Moran*, we are not persuaded that the minor differences in their conduct requires a different result here. Because the defendant's conduct is remarkably similar to that of the defendant in *Moran*, where there was sufficient evidence of rascality to violate the CPA, we conclude that the trial court did not err in denying the defendant's motion to dismiss.

▣ Finally, the defendant argues, based upon our opinion in *State v. Hancock*, 156 N.H. 301, 302-05 (2007), that it was plain error for the trial court to have imposed the sentence that it did and that the sentence must, therefore, be vacated. *See* SUP. CT. R. 16-A. The plain error rule allows us to consider errors not brought to the attention of the trial court. *State v. Matey*, 153 N.H. 263, 266 (2006). However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* For us to find error under the rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.* Imposition of an illegal sentence is a serious error routinely corrected on plain error review. *See State v. Henderson*, 154 N.H. 95, 99 (2006).

▣▣ In *Hancock*, the defendant was convicted of misdemeanor simple assault and sentenced to twelve months in jail, stand committed, a $2,000 fine and two years of probation. *Hancock*, 156 N.H. at 302. We stated that under RSA 651:2 (2007), which defines the sentences the trial court may impose, probation could be enforced only through a fine or imprisonment up to the maximums of the underlying offense, and that the trial court did not have the authority to punish probation violations by use of the contempt power. *Id.* at 303, 305. Since the defendant had been sentenced to the maximum jail time and fine for the underlying offense, the trial court was without residual authority to punish any potential probation violation. *Id.* at 304. Thus, we concluded that although "the trial court has discretion to sentence a defendant to incarceration, impose a fine, or a combination of the two, it may not sentence a defendant to both statutory maximums if it also imposes probation." *Id.* at 303. "A trial court must, in order to impose probation, retain a portion of its sentencing power as an enforcement mechanism." *Id.* at 304. We further concluded that the error constituted "plain error" under our plain error rule. *Id.*

Here, the defendant was sentenced in a manner substantially similar to the defendant in *Hancock*, which we held was plain error. At oral argument, the State acknowledged that if the sentence was imposed, it would violate

*Hancock.* Accordingly, we vacate the defendant's sentence and remand to the trial court for resentencing. *See id.* at 305.

*Conviction affirmed; sentence vacated; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.